ESTATE OF ABRAHAM M. SONNABEND, DECEASED, ROGER P. SONNABEND, PAUL SONNABEND, STEPHEN SONNABEND, AND LEOPOLD SONNABEND, EXECUTORS, AND ESTHER SONNABEND, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1838–63.   Filed June 20, 1966.

*Robert J. Richards, Jr.,* and *David Burstein,* for the petitioners.
*Lawrence A. Wright,* for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in income tax for the fiscal year ended August 31, 1958, in the amount of $47,174.36. The sole issues remaining for decision concern the application of section 270 of the Internal Revenue Code of 1954. The issues are (1) whether Abraham M. Sonnabend had allowable deductions attributable to a trade or business carried on by him for 5 consecutive years which in each year exceeded by more than $50,000 the gross income derived therefrom, and (2) whether respondent's determination is barred by the statutory period of limitations. Other issues have been settled by stipulation.

### FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Abraham M. Sonnabend and Esther Sonnabend were husband and wife during the years 1952 to 1958 and resided in Brookline, Mass. They filed joint Federal income tax returns for fiscal years ended August 31, in 1954 through 1958, with the district director of internal revenue at Boston, Mass. Their return for fiscal 1958 was filed on or about February 15, 1959.

The notice of deficiency was mailed February 7, 1963. Abraham M. Sonnabend died several months after the petition was filed, and his estate has been substituted as a petitioner. The term "petitioners" as used herein refers to Abraham M. and Esther Sonnabend, the original petitioners.

In January 1952 Sonnabend purchased a farm in Millis and Holliston, Mass., together with a herd of cattle, farm machinery, and equipment. He paid approximately $125,000 for the herd, $65,000 for the land and buildings, and $13,000 for the machinery and equipment. He engaged in cattle-breeding operations as a sole proprietor under the name of "Sonesta Farm" from January 1952 until September 25, 1953. Part of the Sonesta herd was disposed of at a dispersal sale on September 25, 1953.

In June 1953 Samuel Katz, owner of a farm in Port Chester, N.Y., known as Fairlawn Farms, held a dispersal sale at which Sonnabend acquired a herd of 59 head of cattle for a cost of $325,850. The Katz herd had been developed over many years.

On July 1, 1953, Sonnabend and two of his sons, Roger P. and Paul, organized a partnership under the name of "Fairlawn Farms of Massachusetts" to take over the herd which Sonnabend had acquired from Katz and the balance of the Sonesta herd not disposed of at the disper-

sal sale in September 1953, and to engage in raising quality cattle for breeding purposes. This partnership is hereinafter sometimes referred to as the partnership.

Approximately $240,000 in improvements to the farm in Millis and Holliston was expended in preparation for moving the Katz herd from Port Chester, N.Y., to the farm in Millis and Holliston. These improvements included the construction of a maternity barn for calves, remodeling a barn to handle large equipment, acquisition of an electric generator, construction of a calves' barn, a heifer shed, fences, a hay dryer, and a building to house employees. In addition, from 150 to 200 acres were cleared and reclaimed for pastures for the herd.

During the spring of 1954, after many of the improvements described above had been completed, Sonnabend moved the Fairlawn herd from Port Chester, N.Y., to the farm at Millis and Holliston, Mass.

On July 1, 1954, a third son, Stephen, became a member of the partnership.

The respective percentage interests of the partners in the profits and losses of the partnership for the taxable years ended June 30, 1954, through June 30, 1958, were as follows:

|  | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|
|  | Percent | | | | |
| Abraham M. Sonnabend | 50 | 40 | 40 | 70 | 70 |
| Roger P. Sonnabend | 25 | 20 | 20 | 10 | 10 |
| Paul Sonnabend | 25 | 20 | 20 | 10 | 10 |
| Stephen Sonnabend | | 20 | 20 | 10 | 10 |

In the fiscal years ended in 1955 through 1958 the Fairlawn partnership engaged in the business of hotel management as well as the operation of the cattle-breeding farm. The partnership returns report income from management fees in the following amounts:

| FYE June 30— | Amount |
|---|---|
| 1955 | $150,806.41 |
| 1956 | 118,593.93 |
| 1957 | 51,936.31 |

The management income for the fiscal year ended in 1958 is not shown.

The books of the hotel-management operations were kept separate from the books of the farm operations.

For all years relevant to this case the books of the farm were maintained on a cash basis, and the Federal income tax returns of petitioners and the U.S. partnership returns (Forms 1065) of the partnership were prepared and filed on a cash basis. The partnership returns covered fiscal years ending on June 30.

The following table shows Sonnabend's share of taxes and interest paid in connection with the Sonesta farming operation for the taxable

year ended August 31, 1954, and in connection with the Fairlawn partnership farming operation for the taxable years ended June 30, 1954, through June 30, 1958:

| | Sonesta August 31, 1954 | Fairlawn | | | | |
|---|---|---|---|---|---|---|
| | | June 30— | | | | |
| | | 1954 | 1955 | 1956 | 1957 | 1958 |
| Taxes | $7,150.47 | $209.56 | $540.05 | $1,750.18 | $3,670.83 | $858.04 |
| Interest | 2,188.08 | | 1,222.29 | 2,977.74 | 52.64 | |

The direct costs to Sonnabend or to the partnership of raising a calf to 24 months of age amounted to a minimum of $250 per year. The direct costs of maintaining a milk-producing cow are greater.

In the cattle-breeding business, stock is sold at various ages. In the process of developing a herd, animals are culled. Some are sold at high prices when they and their family history indicate good stock, and the inferior animals are sold at nominal prices.

Sonnabend engaged Earl B. Hopper, a doctor of veterinary medicine, to manage and supervise the farming operation from 1953. Hopper had been manager of the Katz farm in Port Chester, N.Y., and advised Sonnabend as to selecting cattle for his farm with the intent to develop a Guernsey herd of the best quality. The facilities at the farm were planned for accommodation of about 100 head of cattle. The improvements were recommended by Hopper.

The costs of raising and maintaining all cattle were charged to farming expense. The purchase price of all cattle purchased was amortized through depreciation. No deductions for depreciation were taken for cattle born on the farm since the costs of raising and maintaining these cattle were charged to farming expense.

In the operation of Sonesta Farm, Sonnabend had the following receipts, expenses, and net losses:

| | Fiscal year ended Aug. 31— | |
|---|---|---|
| | 1954 | 1955 |
| Cost of cattle sold | $61,560 | $44,150 |
| Cash received | 13,783 | 30,055 |
| Depreciation taken on cattle | 6,005 | |
| Loss on sale | 34,850 | |
| General expenses—net | 69,412 | 8,513 |
| Farm loss | 110,267 | 8,513 |

"Cattle sold" includes cattle disposed of by gifts, or death or destruction.

The operation of Sonesta Farm for the year ended in 1955 was a "realty" operation. The item of $44,150 for cost of cattle sold for

the fiscal year ended in 1955 represents the acquisition by Fairlawn Farms of cattle in the partnership fiscal year ended June 30, 1955.

The following table shows the receipts, expenses, and losses incurred in the operation of the partnership of Fairlawn Farms for the fiscal years ended in 1954 through 1958, and shows Sonnabend's share of the losses:

FAIRLAWN FARMS PARTNERSHIP

|  | Fiscal year ended June 30— | | | | |
|  | 1954 | 1955 | 1956 | 1957 | 1958 |
|---|---|---|---|---|---|
| Cattle bought, cost | $325,850 | $44,150 | $585 | $10,835 | $19,353 |
| Cattle disposed, cost | 30,100 | 10,800 | 64,750 | 14,885 | 56,628 |
| Cash received on sales | 16,450 | 27,389 | 43,003 | 15,226 | 40,186 |
| Depreciation on cattle | 90,157 | 76,832 | 51,235 | 37,328 | 25,970 |
| Gain on cattle sales | 10,659 | 22,124 | 20,391 | 11,670 | 30,790 |
| General expenses, net | 71,257 | 122,821 | 137,764 | 137,341 | 122,481 |
| Farm loss | 150,755 | 177,529 | 168,608 | 162,998 | 117,661 |
| Sonnabend's share of loss | 80,378 | 71,012 | 67,443 | 114,099 | 82,363 |

In the fiscal year ended in 1959 the partnership had net general expenses of $130,457, gain of $13,832 on the sale of cattle, and total farm loss of $133,259, of which Sonnabend's share was $93,281. In the fiscal year ended in 1960 the partnership had net general expenses of $25,205, gain of $145,063 from sales of cattle, and a gain of $117,115 from farm operations, of which Sonnabend's share was $81,981.

In the fiscal year ended in 1954, three animals died or were destroyed and seven cattle were sold for a total price of $16,450. Five were sold at prices in excess of $2,000, and two for lesser amounts. The total number of animals on hand on June 30 was 85. The original cost of those acquired by purchase was $295,750, and depreciation in the amount of $82,772.81 was claimed on them.

In the fiscal year ended in 1955, 5 animals died or were destroyed and 27 were sold for a total price of $27,389.19. Six of those were sold for $2,000 each or more, 14 for amounts between $500 and $2,000, and 5 for less than $100 each. At the end of the fiscal year there were 110 animals on hand. The cost of those acquired by purchase was $329,100, and depreciation in the amount of $75,878.91 was claimed on them.

In the fiscal year ended in 1956, 12 animals died or were destroyed, and 46 were sold for a total price of $55,072.96. Of those, 11 were sold for a price of $1,000 or more, 2 of them for $12,000 each, 1 for $6,000, and 19 were sold for less than $100 each. At the end of the fiscal year there were 98 animals on hand, the cost of those purchased was $264,350, and depreciation in the amount of $48,197.26 was claimed on them.

In the fiscal year ended in 1957, 9 animals died or were destroyed and 32 were sold for a total price of $15,156.48. The highest price realized was $2,250. Eight sales were for $1,000 or more and 18 were

for less than $100 each. At the end of the fiscal year there were 118 animals on hand. The cost of those purchased was $265,885, and depreciation in the amount of $36,939.36 was claimed on them.

In the fiscal year ended in 1958, 13 animals died or were destroyed, 46 were sold for a total price of $40,185.66. Two were sold at prices of $5,000 or more, 1 other for more than $4,000, and there were 10 other sales at prices over $1,000. Sixteen sales were for less than $100 each. At the end of the fiscal year there were 113 animals on hand. The cost of those acquired by purchase was $223,110, and depreciation in the amount of $23,726.78 was claimed on them.

The cattle on hand at the end of each fiscal year were in the following age groups (in months) :

| Date | Total | 0-24 | 25-36 | 37-48 | 49-60 | Over 60 |
|---|---|---|---|---|---|---|
| June 30— | | | | | | |
| 1954 | 85 | 45 | 13 | 1 | 7 | 19 |
| 1955 | 110 | 50 | 15 | 12 | 3 | 30 |
| 1956 | 98 | 43 | 11 | 10 | 7 | 27 |
| 1957 | 118 | 53 | 12 | 8 | 9 | 36 |
| 1958 | 113 | 46 | 14 | 8 | 9 | 36 |

Respondent's determination is explained as follows :

It has been determined that the loss in the amount of $82,362.57 attributable to your share of the distribution from the farm division of the partnership known as Fairlawn Farms of Massachusetts is disallowed to the extent of $31,504.53. Since you incurred losses in excess of $50,000.00 from the operation of the farm for five consecutive years, ending with the fiscal year August 31, 1958, your taxable income has been increased in the amount of $31,504.53, computed as follows:

| | | |
|---|---|---|
| Your share of net loss from farm division of partnership | | $82,362.57 |
| Less: Your share of taxes and interest: | | |
| Interest | 0 | |
| Taxes | $858.04 | |
| Limitation of loss | 50,000.00 | 50,858.04 |
| Adjustment of taxable income | | 31,504.53 |

Sonnabend had losses from the Sonesta farm operation in the fiscal years ended August 31, 1954 and 1955, amounting to $110,267 and $8,513, respectively. His share of the losses of the Fairlawn Farms operation for the fiscal years of the partnership ended June 30 in 1954 to 1958 was in the following amounts:

| FYE June 30— | Amount |
|---|---|
| 1954 | $80,378 |
| 1955 | 71,012 |
| 1956 | 67,443 |
| 1957 | 114,099 |
| 1958 | 82,363 |

The Fairlawn Farms partnership business was in a productive state during the fiscal years of the partnership ended in 1954 through 1958.

Sonnabend had allowable deductions attributable to his trade or business of operating a cattle breeding farm which for the 5 consecutive fiscal years ended August 31 in 1954 to 1958 exceeded by more than $50,000 in each year the income derived from such business.

## OPINION

Petitioners plead the bar of the statute of limitations. Their joint return for the taxable year ended August 31, 1958, was filed late— on February 15, 1959. The 3-year statutory period of limitations for assessment provided for in section 6501(a), I.R.C. 1954, expired February 15, 1962. The deficiency notice was mailed February 7, 1963. This notice determined a deficiency based, in part, upon disallowance of $31,504.53 of a claimed loss deduction of $82,362.57, the disallowance being for the stated reason that Sonnabend incurred losses in excess of $50,000 annually from farming operations for 5 consecutive years. Respondent made this determination pursuant to section 270 [1] of the Internal Revenue Code of 1954. Section 270(d)

---

[1] SEC. 270. LIMITATION ON DEDUCTIONS ALLOWABLE TO INDIVIDUALS IN CERTAIN CASES.

(a) RECOMPUTATION OF TAXABLE INCOME.—If the deductions allowed by this chapter or the corresponding provisions of prior revenue laws (other than specially treated deductions, as defined in subsection (b)) allowable to an individual (except for the provisions of this section or the corresponding provisions of prior revenue laws) and attributable to a trade or business carried on by him for 5 consecutive taxable years have, in each of such years (including at least one year to which this subtitle applies), exceeded by more than $50,000 the gross income derived from such trade or business, the taxable income (computed under section 63 or the corresponding provisions of prior revenue laws) of such individual for each of such years shall be recomputed. For the purpose of such recomputation in the case of any such taxable year, such deductions shall be allowed only to the extent of $50,000 plus the gross income attributable to such trade or business, except that the net operating loss deduction, to the extent attributable to such trade or business, shall not be allowed.

(b) SPECIALLY TREATED DEDUCTIONS.—For the purpose of subsection (a) the specially treated deductions shall be taxes, interest, casualty and abandonment losses connected with a trade or business deductible under section 165(c)(1), losses and expenses of the trade or business of farming which are directly attributable to drought, the net operating loss deduction allowed by section 172, and expenditures as to which taxpayers are given the option, under law or regulations, either (1) to deduct as expenses when incurred or (2) to defer or capitalize.

(c) REDETERMINATION OF TAX.—On the basis of the taxable income computed under the provisions of subsection (a) for each of the 5 consecutive taxable years specified in such subsection, the tax imposed by this subtitle or the corresponding provisions of prior revenue laws shall be redetermined for each such taxable year. If for any such taxable year assessment of a deficiency is prevented (except for the provisions of section 1311 and following) by the operation of any law or rule of law (other than section 7122, relating to compromises), any increase in the tax previously determined for such taxable year shall be considered a deficiency for purposes of this section. For purposes of this section, the term "tax previously determined" shall have the meaning assigned to such term by section 1314(a)(1).

(d) EXTENSION OF STATUTE OF LIMITATIONS.—Notwithstanding any law or rule of law (other than section 7122, relating to compromises), any amount determined as a deficiency under subsection (c), or which would be so determined if assessment were prevented in the manner described in subsection (c), with respect to any taxable year may be assessed as if on the date of the expiration of the time prescribed by law for the assessment of a deficiency for the fifth taxable year of the 5 consecutive taxable years specified in subsection (a), 1 year remained before the expiration of the period of limitation upon assessment for any such taxable year.

provides a 1-year extension of the period of limitations in this situation, and the notice, having been filed before February 15, 1963, is timely if section 270 is applicable.

On the petitioners' returns for the 5 fiscal years ended in 1954 through 1958 Sonnabend claimed deductions attributable to his business of farming which in each year exceeded by more than $50,000 the gross income derived from such business. Respondent determined that section 270 is applicable, and that under the recomputation required by section 270(a) the deductions must be limited as provided in that section.

Petitioners first contend that since they filed joint returns for the taxable years involved, their share of the farming loss should be allotted one-half to Abraham and one-half to Esther for the purpose of the computation under section 270(a), in which case neither of them would have had deductions in excess of $50,000 in some of these years. They cite *Fred MacMurray*, 21 T.C. 15 (1953), acq. 1954–1 C.B. 5; Rev. Rul. 54–178, 1954–1 C.B. 128; and Rev. Rul. 54–179, 1954–1 C.B. 129. In *MacMurray* we held that where a husband and wife owned a ranch as community property and the deductions attributable to the business as a whole exceeded by more than $50,000 the gross income derived for each of 5 successive years but the share attributable to each spouse did not, section 130, I.R.C. 1939, the predecessor of section 270, did not apply. Rev. Rul. 54–179 is to the same effect. Rev. Rul. 54–178 holds that in applying section 130 the losses of a business carried on by a husband and wife as partners should be considered separately, even though they file joint returns. Section 1.270–1(a)(4), Income Tax Regs., contains similar provisions relating to section 270.

The holding in the *MacMurray* case is not applicable here for the petitioners were not in a community property State. There is no showing that Esther Sonnabend was at any time a partner in the farm business. Although it is stipulated that Abraham and his sons formed a partnership, there is no indication or contention that Esther was a participant. Therefore, Rev. Rul. 54–178 is not applicable here.

Petitioners next contend that when the "specially treated deductions," as defined in section 270(b) are eliminated in the recomputation under section 270(a), the allowable deductions do not exceed the gross income for each taxable year by more than $50,000.

Section 270(b) defines "specially treated deductions" as including taxes and interest and "expenditures as to which taxpayers are given the option * * * either (1) to deduct as expenses when incurred or (2) to defer or capitalize." The applicable regulations, sec. 1.270–1(b)(4), Income Tax Regs., state that these expenditures include, but are not limited to, intangible drilling and development costs in the case of oil and gas wells and expenditures for the development of a mine or other natural deposit.

Petitioners refer to section 1.162–12, Income Tax Regs., providing, in part:

Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital. * * *

This provision gives a farmer in developing a farm the option to capitalize, prior to the time when the productive state is reached, expenditures incurred during the period of development which might otherwise be deductible as current expenses.

Petitioners contend that the farm was not in a productive state during the 5 fiscal years ended in 1954 through 1958 and accordingly, pursuant to the foregoing regulation, all expenses for feed, labor, and other costs of raising the livestock during these years are to be considered as specially treated deductions in the recomputation. This would, admittedly, reduce the annual losses well below $50,000. Petitioners' witness Hopper testified that it would take about 5 years to develop a breeding herd to the point of profitable operation. He said, also, that the farm was planned for a herd of approximately 100 cattle.

Sonnabend purchased the farm and a herd of cattle in 1952. In 1953 he purchased a part of the Katz herd, 59 head, and sold practically all of his original herd. The Katz herd had been in existence for many years. In early 1954 he and his partners moved the Katz herd to the remodeled farm. On June 30, 1954, the herd numbered 85 cattle. One year later the herd was increased to 110 head, which was all the farm was planned to handle. Sales were made on a regular basis commencing in 1954. In the fiscal year ended in 1954, five cattle were sold at prices in excess of $2,000 each. In the year ended in 1955, 6 were sold for $2,000 each or more, and 14 others at $500 or more. In the year ended in 1956, two animals were sold at a price of $12,000 each and one for $6,000. Eight others were sold for prices of $1,000 or more. In the year ended in 1957, eight were sold for $1,000 each or more. In the year ended in 1958, there were 13 sales at prices of $1,000 each or more, including 3 at more than $4,000. Instead of building a herd, Sonnabend and his partners purchased two established herds for an exceedingly large investment—$125,000 for the first and $325,850 for the second—and commenced selling good stock immediately. The farm was in a productive state from an early point in the venture. We do not agree that all the costs of the business operation were incurred in bringing the farm to a productive state and may therefore be considered as specially treated deductions.

Petitioners also contend that since a farmer has the option of making a return either under a cash receipts and disbursements method or an inventory method (sec. 1.471–6, Income Tax Regs.), Sonnabend, in

the operation of the cattle breeding farm, had the option of deducting all the general expenses of the farm as they were incurred, or of deferring or capitalizing them by the method of an inventory. Petitioners say that since the farm was a business operation in which the production, purchase, and sale of merchandise is an income-producing factor, it is necessary to deduct the costs of the items produced in order to arrive at the gross income derived. They present the following computation for the Fairlawn partnership farm business for the fiscal years ended in 1954, 1955, and 1956 in which the general expenses, net, are substracted from the gain on cattle sales (all the figures as stipulated), resulting in "gross income" of the partnership, actually a loss, and in which Sonnabend's share, which in those years was respectively 50 percent, 40 percent, and 40 percent, is shown to be less than $50,000 in each year:

|  | Year ended June 30— | | |
|  | 1954 | 1955 | 1956 |
| --- | --- | --- | --- |
| General expenses, net | ($71,257) | ($122,821) | ($137,764) |
| Gain on cattle sales | 10,659 | 22,125 | 20,391 |
| Gross income (or loss) | (60,598) | (100,696) | (117,373) |
| Sonnabend's share | (30,299) | (40,278) | (46,949) |

The foregoing figures can also be reached by subtracting from the total farm loss the depreciation on cattle, as those items are shown in the stipulated facts:

|  | Year ended June 30— | | |
|  | 1954 | 1955 | 1956 |
| --- | --- | --- | --- |
| Farm loss | ($150,755) | ($177,529) | ($168,608) |
| Depreciation on cattle | (90,157) | (76,832) | (51,235) |
| Gross income (or loss) | (60,598) | (100,697) | (117,373) |

The effect of the petitioners' computation is to eliminate the deductions which were taken on the partnership returns for depreciation on purchased cattle. If these amounts are eliminated, Sonnabend's losses would be less than $50,000 in some of the years involved. The petitioners' contention appears to be that deductions for depreciation on such cattle should be regarded as "specially treated deductions" for purposes of the recomputation under section 270(a). Section 270(b) defines this term as including *expenditures* as to which taxpayers are given the option to deduct as expenses or to defer or capitalize. But depreciation is not an expenditure, and deductions on account of depreciation, as such, are not within the scope of the definition of specially treated deductions.

We do not agree with petitioners' contention that the option given farmers to make a return either under a cash receipts and disbursements method or an inventory method permits a farmer to regard all expenses of his business as specially treated deductions. Respondent concedes that one of the indirect results from an election of accounting methods is current expensing, if the cash method is used, or the deferral of expenses to the year of sale, if some other method available to farmers is elected. We agree with respondent, however, that the options referred to in section 270(b) cannot be construed as relating to any option resulting from the choice of accounting methods but only to certain types of *expenditures* as to which taxpayers are given specific options to deduct, or to capitalize, regardless of the accounting method in use.

The petitioners do not have such an option with respect to the cost of cattle purchased. The regulation relating to expenses of farmers, sec. 1.162–12, states that "Amounts expended in purchasing work, breeding, or dairy animals are regarded as investments of capital, and shall be depreciated unless such animals are included in an inventory in accordance with section 1.61–4." The petitioners may not treat the cost of cattle purchased as a deductible expense. *D. E. Alexander*, 22 T.C. 234 (1954). Nor do the petitioners have an option with respect to the ordinary expenses of operating the farm, since we have concluded that it was not in the development state in the fiscal years 1954 to 1958. These expenses are deductible currently or not at all. They may not be capitalized or deferred.

We conclude that respondent has properly applied section 270 and that the notice of deficiency is timely.

*Decision will be entered under Rule 50.*