D. E. Alexander, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

D. E. Alexander and Lucille D. Alexander, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 35555, 35556. Filed April 30, 1954.

*Theodore R. Meyer, Esq.,* and *Robert H. Schnacke, Esq.,* for the petitioners.

*Leonard Allen Marcussen, Esq.,* for the respondent.

236

OPINION.

HARRON, *Judge:* The chief question is whether the petitioner, who is on a cash basis, is entitled to deduct the cost of feeder cattle in the year of purchase, as he contends, or whether the deduction of such cost must be deferred until the year in which the cattle are sold, as respondent determined.

The respondent contends that the petitioner's practice of deducting the cost of cattle as an operating expense in the year of purchase without regard to when the cattle are sold distorts income. He argues that although the petitioner is on a cash basis, petitioner is required, nevertheless, by section 29.22(a)–7 of Regulations 111,[1] to compute gross in-

---

[1] Sec. 29.22 (a)–7. GROSS INCOME OF FARMERS.—A farmer reporting on the basis of receipts and disbursements (in which no inventory to determine profits is used) shall include in his gross income for the taxable year (1) the amount of cash or the value of merchandise or other property received during the taxable year from the sale of live stock and produce which were raised during the taxable year or prior years, (2) the profits from the sale of any live stock or other items which were purchased, and (3) gross income from all other sources. The profit from the sale of live stock or other items which were purchased after February 28, 1913, is to be ascertained by deducting the cost from the sales price in the year in which the sale occurs, except that in the case of the sale of animals purchased as draft or work animals or solely for breeding or dairy purposes and

come by including the purchase cost of cattle in cost of sales for the year of sale; that is to say, petitioner must defer deduction of the purchase cost of cattle until the year of sale. The specific provision of the regulation upon which the respondent relies is as follows:

The profit from the sale of live stock or other items which were purchased after February 28, 1913, is to be ascertained by deducting the cost from the sales price in the year in which the sale occurs, * * *

The respondent takes the position that if petitioner elects to use a cash basis in reporting income, he must do so subject to the limitation contained in the aforementioned provision of the regulations. Respondent concedes that the petitioner has an option under the applicable regulations to report income on either a cash or an inventory-accrual basis. He denies that his determination would force the petitioner to adopt an inventory-accrual method of accounting, or that it requires the use of inventories.

Petitioner contends that under the pure cash method of accounting, which he has regularly followed in keeping his books and reporting his income, it is proper for him to deduct the cost of cattle in the year of purchase, and that his method of accounting, when consistently followed, clearly reflects his income. This is particularly true, he asserts, where, as here, a relatively constant level of operations is maintained. He contends, further, that the respondent's method of accounting for the purchase cost of cattle does not clearly reflect his income because it is a hybrid method which combines a cash basis with the use of inventories. In support of this contention, petitioner argues that the respondent actually determined the deficiencies by the use of reconstructed inventories. Finally, petitioner contends that the provision of the regulation upon which the respondent relies was not, in fact, followed by the respondent in computing the deficiencies, and that, in any event, the regulation is not applicable to the facts of this case.

Petitioner belongs to the class "farmer" under Regulations 111, section 29.22(a)–7. Farmers have an option under the regulations to report income on either a cash basis (in which no inventory to determine profits is used), or an accrual basis (in which an inventory to determine profits is used). Regs. 111, secs. 29.22(a)–7 and 29.22(c)–6. Petitioner has elected to report income on a cash basis. Section 29.22(a)–7 of Regulations 111 sets forth the manner in which the gross income of farmers who elect to report on a cash basis is to be determined. The regulation provides, in pertinent part, that a farmer who reports on a cash basis shall include in gross income for

not for resale, the profit shall be the amount of any excess of the sales price over the amount representing the difference between the cost and the depreciation theretofore allowed (but not less than the amount allowable) in respect to such property as a deduction in computing net income.

 *      *      *      *      *      *      *

the taxable year, *inter alia*, the profit from the sale of livestock or other items which were purchased, and that the profit from the sale of livestock or other items which were purchased is to be determined by deducting the cost thereof from the sales price in the year of sale. Consequently, if the regulation is valid, and if it has been correctly applied to the facts of this case, the respondent's determination must be sustained.

Treasury regulations are valid unless unreasonable or inconsistent with the statute. The Supreme Court, in *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496, 501, observed that, "This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." The regulation in question is not unreasonable and plainly inconsistent with the revenue statutes. In fact, it must be regarded as having the approval of Congress and the force of law.

The applicable provisions of section 29.22(a)-7 of Regulations 111, appeared initially in Article 38 of Regulations 45, promulgated January 28, 1921. Article 38 of Regulations 45 implemented section 213(a) of the Revenue Act of 1918, relating to gross income. Identical provisions have appeared in the regulations promulgated to implement corresponding sections of every revenue act since the 1918 act. It is well settled that a regulation which has continued in force substantially unchanged through successive reenactments of the statutory provision to which it pertains must be regarded as having congressional approval. *Lykes* v. *United States*, 343 U. S. 118; *Commissioner* v. *Wheeler*, 324 U. S. 542; *Morrissey* v. *Commissioner*, 296 U. S. 344. As stated by the Supreme Court in *Helvering* v. *R. J. Reynolds Tobacco Co.*, 306 U. S. 110, 116, "the legislative approval of existing regulations by reenactment of the statutory provision to which they appertain gives such regulations the force of law."

The purpose of the regulation is to prevent a shifting or postponing of income from year to year through the medium of livestock purchases. If the cost of livestock which is purchased for resale could be deducted in the year of purchase without regard to when it was sold, the income of any accounting period could be readily distorted. For example, a farmer could offset, in whole or in part, income which he receives from crops by the purchase of livestock for resale in a subsequent year or years. Or a "farmer" who deals exclusively in livestock which he purchases for resale, as does the petitioner, could shift or postpone income indefinitely simply by increasing in each year his purchases of young animals. To prevent such practices, the regulation requires a cash basis farmer who purchases livestock for resale

to defer deduction of the cost thereof until the year of sale. We find nothing in this requirement of the regulation which could be construed as unreasonable and plainly inconsistent with the revenue statutes. To the contrary, the regulation by preventing distortions of income is in harmony with section 41 of the Code.

Although petitioner contends that under what may be called a pure cash method of accounting, purchases are regarded as costs chargeable against income in the period in which payment is made, the regulations do not give the petitioner an option to account for, and to report income on, a pure cash basis. If petitioner elects to report on a cash basis, he must do so in the manner prescribed by the regulations and subject to the limitations contained therein. The fact that the regulations require a departure from a pure cash basis is not significant. Farmers who with the consent of the Commissioner report income on a crop basis depart from a pure cash method of accounting. See Regs. 111, sec. 29.23 (a)-11.

Petitioner's contention that, in order to comply with the regulation, he would have to use inventories, and that the respondent, in determining the deficiencies, used reconstructed inventories, is without support in the record. As set forth in the Findings of Fact, the respondent determined the deficiencies by adjusting the amount of the deduction claimed in each of the taxable years as cost of feeder cattle. He did not compute cost of sales by using inventories. The fact that a result similar to the respondent's determination is obtained by using inventories valued at cost to compute cost of sales is not material.

We have carefully considered all of the petitioner's arguments and we find that they are without merit. The regulation upon which the respondent relies is valid and we are aware of no reason why it should not be applied in this case.

It is held that the petitioner must determine his profit from the sale of cattle by deducting the cost thereof from the sales price in the year in which the sale occurs as provided by Regulations 111, section 29.22 (a)-7.

The remaining question is whether petitioner is entitled to deduct in each of the years 1945 and 1946 the cost of the cattle which were sold in each of those years but which were purchased in prior years, such costs having been deducted by petitioner in the years of the purchase or purchases of the cattle.

As of January 1, 1945, petitioner had on hand cattle which he purchased prior to 1945, at a cost of $111,633.34, and which he sold in 1945 and 1946. The cattle sold in 1945 cost $75,940.60; the cattle sold in 1946 cost $35,692.74. Under the method of accounting which petitioner followed, he deducted the cost of the cattle in the year of purchase. In determining the deficiencies for 1945 and 1946, the respondent did not

include such cost in the cost of the cattle sold in those years, namely $75,940.60, and $35,692.74, respectively, on the theory that to do so would allow the petitioner a second, or double, deduction for the identical cost.

Petitioner contends that, under the rationale of *Commissioner* v. *Dwyer*, 203 F. 2d 522, and *Caldwell* v. *Commissioner*, 202 F. 2d 112, the respondent's determination is erroneous. We agree with the petitioner. The respondent's determination presents essentially the same problem as was involved in the *Dwyer* and *Caldwell* cases. Although the respondent's determination in this proceeding did not require petitioner to change from a cash to an inventory-accrual method of accounting, and inventories or accounts receivable are not involved here, there is no distinction in principle between this case and the cited authorities.

The cost of the cattle which were purchased prior to 1945, and were sold in 1945 and 1946, was improperly deducted by the petitioner in determining income of a prior year or years. The respondent, in failing to allow deduction in 1945 and 1946 of the cost of the cattle which were sold in 1945 and in 1946, has, in effect, attempted to tax in 1945 and 1946 income of a prior taxable period or periods, the taxation of which is now barred by the statute of limitations. This he cannot do. *David W. Hughes*, 22 T. C. 1. The respondent's determinations under this issue are overruled and it is held that the petitioner is entitled to include $75,940.60 in costs of sales for 1945 and $35,692.74 in costs of sales for 1946.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Opper, *J.*, dissents.