**E. W. BLISS COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**E. W. BLISS COMPANY, Plaintiff Cross Appellant,**

v.

**UNITED STATES of America, Defendant Cross Appellee.**

**Nos. 15810, 15811.**

United States Court of Appeals Sixth Circuit.

Sept. 29, 1965.

---

[1]. 72 Stat. 845 (1958).

[2]. 72 Stat. 847 (1958).

[3]. 1958 U.S. Code Cong. & Ad. News 3891, 3892.

Chester C. Davis, New York City, Simpson, Thacher & Bartlett, New York City, Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief, for E. W. Bliss Company.

Richard J. Heiman, Atty., Dept. of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Attys., Dept. of Justice, Washington, D. C., on the brief; Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, of counsel, for the United States.

Before EDWARDS, Circuit Judge, MACHROWICZ, District Judge,[1] and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The E. W. Bliss Company, taxpayer herein, brought an action in the district court to recover an alleged overpayment of corporate income taxes for the year 1951. It contended that the Commissioner of Internal Revenue acted arbitrarily in disallowing a write-down of the taxpayer's inventory of work in process; and that certain New York franchise tax refund claims had accrued at the time the application for refund was filed. The greater the write-down of the inventory, the less was the amount of income tax payable. The Commissioner contended that the accounting procedure used by the taxpayer in writing down the inventory did not conform to the best accounting practices, and did not clearly reflect income. Accordingly, the Commissioner of Internal Revenue gave notice of a deficiency, which the taxpayer paid in the amount of $621,983.30 on June 10, 1959; and thereafter the taxpayer filed suit to recover the claimed overpayment. The district court held that the Commissioner of Internal Revenue had acted arbitrarily in disallowing the write-down of the taxpayer's inventory of work in process; that there was no accrual of the New York franchise tax refunds at the time application therefor was made; and, by order, the court denied the company's application for the allowance of taxation of expert witness fees. The government appealed from the judgment of the district court, and the taxpayer filed a cross appeal.

The Bliss company manufactures rolling mills and huge presses used in the making of steel and the fabrication of steel products. These were manufactured and sold on a custom basis on orders and specifications furnished by its customers. The price of the presses, which were made to individual order, was fixed before work thereon commenced. Some were priced at a few thousands of dollars and others at hundreds of thousands of dollars for each press. The company computed the value of its inventory of work in process on the basis of cost or market, whichever was lower, as permitted by Regulation. The method adopted was to accumulate all direct costs on each job more than 50% complete. To this amount was added the estimated cost of completion. The total cost of each press as thus determined was then compared with the sale price of presses manufactured at the company's plant at Canton, Ohio, less an allowance of 15% for gross profit margin, and the sale price of presses manufactured at Toledo, less a gross profit margin of 20%. In addition to the "individual" presses, the company also manufactured the so-called "normal" presses. The Canton and Toledo plants were different from the company's other plants. At the latter, mass production methods were used, since the presses there manufactured were normal goods, each press being essentially the same in design, size,

1. Judge Thaddeus M. Machrowicz of the United States District Court for the Eastern District of Michigan, sitting by designation.

and function, and offered to the public at the same price. The presses manufactured at the Canton and Toledo plants are radically different, being of unique and unusual design, extraordinary dimensions and made according to the specifications of the purchasers. Each of these custom-built presses, some of which are four stories in height, is distinctive; they cannot be characterized as normal goods; and the items in the company's inventory of goods in process are abnormal. If the projected cost of a completed press exceeded 80% or 85%, the excess was eliminated from the inventory as of the end of the current year. The 85% amount is used because the taxpayer operates on a 15% gross profit basis. It appears that it is practicable to make an estimate of the cost to finish a job more than 50% complete. All but a very small portion of the write-down of the inventory of December 31, 1951, related to the unfinished presses at the Canton plant as of that date. The amount of the write-down at that plant was $1,018,000. Six months later the actual costs of completion were found to be $1,037,000 in excess of 85% of the selling price, a difference of $19,000, or less than a 2% variance from the additional cost to complete as determined originally. This confirmed, with substantial accuracy, the estimate of costs to complete, and indicated that the company's method of determining excess costs and market value is a reasonable one. The tax law and the generally accepted principles of accounting recognize that substantial accuracy is the objective to be achieved and that, in many situations, exact determinations are neither practicable nor necessary. In its decision, the district court considered the applicable sections of the Internal Revenue Code and the pertinent regulations promulgated thereunder, as well as the testimony of expert accounting witnesses, and found that the company's valuation of work in process inventory was in accordance with the applicable statutes and Treasury Regulations; that it conformed to the best accounting principles; that it had been followed for years consistently by the company; and that it estimates were substantially accurate. The court accordingly held that the company, on the inventory valuation issue, was entitled to a judgment of $770,606.78 plus interest, for overpayment of corporate income taxes for 1951. However, the court held that the New York franchise tax refunds, at issue in this case, had not accrued before 1951; and it further disallowed, as taxable costs, the expenses incurred by the company for expert witness fees.

The foregoing is an outline of the case, the issues, and the decision of the court, in a controversy which is important, complicated, and of great interest, and which was ably presented by arguments and briefs on appeal by counsel for both parties. However, the disposition of the case in the district court in a comprehensive and admirable opinion by the late Judge Charles J. McNamee, who was one of the ablest members of the federal judiciary and one of its most careful expositors of the law, has our complete concurrence, as has his order denying the allowance of expert witness fees sought to be taxed against the government. Nothing we could say could add to the merit of his opinion, or to its clarity, or soundness. It has been stated on several occasions over the years that it is not the policy or practice of this court, in reviewing cases on appeal where a district court has rendered a comprehensive opinion with which we find ourselves in full agreement, to rewrite such an opinion and, in a sense, deprive the trial court of the credit of its careful consideration of the issues and arguments, and complete determination of the cause. United States v. "Cal's Tupelo Blossom U. S. Fancy Pure Honey," 6 Cir., 344 F.2d 288, 289; Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 210 F.2d 146 (C.A.6).

In accordance with the foregoing, the judgment of the district court is affirmed for the reasons set forth in the opinion of Judge McNamee, reported in E. W. Bliss Company v. United States, 224 F.Supp. 374.