## DEARBORN GAGE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 733-65. Filed May 19, 1967.

*Victor R. Wolder*, for the petitioner.
*Charles H. Powers*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioner's income tax for the taxable years ended November 30, 1960, 1961, and 1962, in the amounts of $32,962.47, $4,218.02, and $979.78, respectively.

Petitioner having conceded all other items in the deficiency notice, two issues remain for our consideration:

(1) Was respondent entitled to require petitioner to include overhead costs in inventory values instead of deducting such costs in the year spent?

(2) If so, to what extent, if any, were adjustments properly made under section 481?[1]

---

[1] All references are to the Internal Revenue Code of 1954.

FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioner was incorporated in Michigan on May 1, 1957, and, at the time of the filing of the petition herein, had its principal office at Garden City, Mich. It filed its returns for the taxable years involved herein on the accrual basis with the district director of internal revenue, Detroit, Mich.

At the time petitioner was incorporated, the assets of a partnership, Dearborn Gage Co., of which Elmer Ellstrom, Jr., and Olaf W. Ellstrom were the sole partners, were transferred to petitioner in a transaction qualifying under section 351. Elmer, Jr., and Olaf, on June 30, 1947, and July 31, 1954, respectively, acquired their interests in the partnership from Ralph Ellstrom and Elmer Ellstrom, respectively, who were the parties referred to in *Ralph Ellstrom*, T.C. Memo. 1955-91, affd. 235 F. 2d 181 (C.A. 6, 1956).

Petitioner is engaged in a manufacturing business in which substantial inventories of finished goods and work in process are maintained. In its business, petitioner has two divisions operating at separate plants—the Standards Division and the General Gage Division.

The Standards Division is segregated into two departments, which keep separate inventories. Chromium-plated gage blocks are manufactured in the Gage Block Department while gage block accessories and special gages are manufactured in the Accessories Department.

The General Gage Division is also divided into two departments— the Air Gage Division and the "AGD" (American Gage Design) Gage and Special Gage Department. Various types of gages are manufactered in the General Gage Division.

Petitioner, since its inception on May 1, 1957, has used the first-in, first-out (FIFO) method in valuing inventory and has included only *direct* costs of labor and material in such valuation. Petitioner has never included therein any *indirect* costs and administrative expenses, i.e., overhead costs, and has deducted the same in the year spent. Petitioner's predecessor partnership treated overhead costs in the same manner as petitioner but valued its inventory at the lower of cost or market.

Petitioner's income tax returns and those of its predecessor partnership were audited by respondent's agents every 2 years prior to fiscal year 1960; the propriety of expensing overhead costs was never raised, and no change was recommended by any agent wth respect to the manner in which petitioner's inventory should be computed.

In 1963, respondent's agent audited petitioner's returns for the fiscal years 1960, 1961, and 1962 and determined that petitioner had improperly valued its inventory by failing to include overhead costs.

Accordingly, respondent determined that the following adjustments should be made to petitioner's inventory and income to reflect such costs:

| Year ended Nov. 30— | Adjustment to opening inventory | Adjustment to closing inventory | Increase in inventory and income |
|---|---|---|---|
| 1960 | No adjustment shown | $63,389.36 | $63,389.36 |
| 1961 | $63,389.36 | 71,500.93 | 8,111.57 |
| 1962 | 71,500.93 | 73,385.11 | 1,884.18 |

The parties have stipulated that, if petitioner and its predecessor partnership had added overhead costs to inventory, the following adjustments to inventory would have resulted:

| Year | Closing inventory per tax return | Omitted cumulative overhead costs | Net increase or decrease in income per year |
|---|---|---|---|
| Dec. 31, 1953 [1] | [1] $93,520.20 | $10,087.47 | $10,087.47 |
| Dec. 31, 1954 [1] | [1] 80,757.20 | 8,596.99 | (1,490.48) |
| Dec. 31, 1955 [1] | [1] 82,737.39 | 11,800.47 | 3,203.48 |
| Dec. 31, 1956 [1] | [1] 126,888.92 | 14,897.07 | 3,096.60 |
| Apr. 30, 1957 [1] | [1] 131,449.58 | 16,730.73 | 1,833.66 |
| May 1, 1957 | [2] 131,449.58 | 16,730.73 | 1,833.66 |
| Nov. 30, 1957 | 155,915.52 | 25,596.57 | 8,865.84 |
| Nov. 30, 1958 | 162,895.23 | 55,859.86 | 30,263.29 |
| Nov. 30, 1959 | 143,577.91 | 39,483.79 | (16,376.07) |
| Nov. 30, 1960 | 176,004.10 | 63,389.36 | 23,905.57 |
| Nov. 30, 1961 | 218,513.01 | 71,500.93 | 8,111.57 |
| Nov. 30, 1962 | 252,403.10 | 73,385.11 | 1,884.18 |

[1] Partnership inventory.
[2] Opening balance of petitioner on May 1, 1957.

Of the $63,389.36 cumulative increase to the inventory for 1960, $52,112.19 was allocable to the Gage Block Department. For 1961, $7,098.51 of the $8,111.57 net increase in inventory was allocable to the Gage Block Department. For 1962, $923.43 of the $1,884.18 net increase in inventory was allocable to the Gage Block Department.

The following table reflects per-unit costs and revenues of the Gage Block Department under the so-called "net profit" test:

| | 1961 | 1962 | 1963 | 1964 |
|---|---|---|---|---|
| Labor cost per unit | $2.28 | $2.04 | $2.28 | $2.39 |
| Cost of materials per unit | .17 | .14 | .13 | .16 |
| Per unit expense for sales, administrative and delivery [1] | 1.76 | 1.89 | 2.30 | 2.29 |
| Overhead per unit | 2.33 | 2.26 | 2.18 | 1.91 |
| Total cost | 6.54 | 6.33 | 6.89 | 6.75 |
| Per unit sales price | 6.52 | 6.72 | 7.00 | 6.93 |
| Profit (or loss) | (.02) | .39 | .11 | .18 |
| Percentage profit [2] | | 5.8 | 1.6 | 2.6 |

[1] Respondent's figures for sales expenses, in its computation under the "net profit" test, are substantially different because of its misreading of one of the exhibits. Respondent derived its figures by dividing the sales costs for the whole Standards Division by the number of gage blocks sold rather than dividing the sales costs for only the Gage Block Department by the number of gage blocks sold. Respondent's error resulted in a substantial overstatement of selling expenses.

[2] We note that in one of the stipulated exhibits the cost of materials per unit was stated to be .17 cents, .14 cents, .13 cents, and .16 cents, respectively, for the years in question. However, in light of the other exhibits, these figures seem unreasonably low, and we assume, as apparently did respondent, that the exhibit was in error in stating the figures as cents instead of dollars. However, if we assume the stipulated figures for cost of materials per unit are correct, net profit for the years tested becomes 15 cents, 53 cents, 24 cents, and 34 cents, respectively. In percentage terms, the net profit would be 2.3 percent, 7.9 percent, 3.4 percent, and 4.9 percent, respectively.

### ULTIMATE FINDING OF FACT

By excluding overhead from inventory, petitioner's method of accounting did not clearly reflect income.

### OPINION

Since its incorporation in 1957, petitioner has valued its inventory at cost, including only direct labor and material and excluding overhead. Overhead costs were deducted in the year spent. Petitioner's predecessor similarly valued its inventory except that it used the lower of cost or market. Respondent audited the returns of petitioner's predecessor and of petitioner on several occasions but, until the audit of petitioner's return for the taxable year 1960, respondent did not object to petitioner's excluding overhead from inventory.

Two basic areas of problems are involved herein. First, is respondent entitled to change petitioner's method of accounting by requiring it to include overhead [2] costs in valuing its inventory for the purpose of determining the cost of goods sold rather than treat it as a deductible expense? Second, if respondent can require such a change, what adjustments, if any, stemming from the expensing of overhead in prior years by the taxpayer and its predecessor, should be made with respect to the valuation of petitioner's inventories either under section 481 or otherwise?

We can dispose of the problems involved in the first area rather easily.

Petitioner deducted overhead in the year spent instead of including it in inventory. Respondent argues that the effect of this treatment of overhead is to postpone income, citing *Photo-Sonics, Inc.*, 42 T.C. 926 (1964), affd. 357 F. 2d 656 (C.A. 9, 1966), *D. Loveman & Son Export Corporation*, 34 T.C. 776 (1960), affd. 296 F. 2d 732 (C.A. 6, 1962), certiorari denied 369 U.S. 860, *Frank G. Wikstrom & Sons, Inc.*, 20 T.C. 359 (1953), sec. 1.471-3(c), Income Tax Regs.; [3] and American Institute of Certified Public Accountants, Accounting Research Bull. No. 43 (1955).

---

[2] Petitioner has raised no objection to respondent's computation of overhead so that we do not have before us any question of "direct cost" versus "absorption cost." Cf. *Photo-Sonics, Inc.*, 42 T.C. 926 (1964), affd. 357 F. 2d 656 (C.A. 9, 1966) ; Report of Commissioner of U.S. Court of Claims in *McNeil Machine & Engineering Co.* v. *United States* (Mar. 29, 1967), 1967-7 C.C.H. Fed Tax Serv. par. 8173, 1967-6 P.-H. Fed. Taxes 58,100. We note in passing, however, that respondent incorrectly computed overhead costs by allowing twice for the fact that certain of the items in inventory were only partially completed.

[3] Sec. 1.471-3 Inventories at cost
Cost means :

\* \* \* \* \* \* \*

(c) In the case of merchandise produced by the taxpayer since the beginning of the taxable year, (1) the cost of raw materials and supplies entering into or consumed in connection with the product, (2) expenditures for direct labor, (3) *indirect expenses incident to and necessary for the production of the particular article,* including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit. [Emphasis added.]

Petitioner submits a two-pronged counter-argument. The first prong is based on petitioner's claim that its predecessor's method of valuing inventory was determined in a prior proceeding (*Ralph Ellstrom*, T.C. Memo. 1955-91, affd. 235 F. 2d 181 (C.A. 6, 1956), involving the year 1946) and on the fact that respondent did not object to the use of the method of expensing overhead costs until the taxable year 1960. From this, and relying on respondent's regulations,[4] petitioner argues that it has consistently followed the practice of expensing such costs and that respondent should be estopped from instituting the change he now seeks to impose.

In the prior proceeding (*Ralph Ellstrom, supra*), another taxpayer, another year, a different method of accounting, and a different issue—namely, the proper computation of market value under the taxpayer's accepted method of valuing inventory at cost or market, whichever is lower—were involved. Thus, petitioner's claim of estoppel based on *Ellstrom* must fail.

In *Photo-Sonics, Inc., supra*, the taxpayer also sought to prevent respondent from imposing the identical type of change. We held that the expensing of overhead costs was erroneous and that such treatment could not be considered acceptable solely upon the basis of consistent use over a long period. See also *D. Loveman & Son Export Corporation, supra* at 797. But, even if consistency were deemed a controlling element herein, petitioner would fail. Petitioner concedes that, aside from its claim as to the estoppel effect of *Ellstrom*, it is precluded from utilizing the experience of its predecessor. The period of its own use, namely, from May 1, 1957, to November 30, 1960, or slightly more than 2½ years, is too short a period to establish consistency. *Photo-Sonics, Inc., supra*. We find petitioner's first prong wholly without merit.

Petitioner's second prong is premised on the assertion that the key standard under the statute [5] is whether a method of accounting clearly

---

[4] Sec. 1.471-2 Valuation of inventories.

(a) Section 471 provides two tests to which each inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and

(2) It must clearly reflect the income.

(b) It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and *greater weight is to be given to consistency than to any particular method* of inventorying or basis of valuation *so long as the method* or basis used *is substantially in accord with* §§ *1.471-1 through 1.471-9.* An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income. [Emphasis added.]

[5] SEC. 471. GENERAL RULE FOR INVENTORIES.

Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

reflects income, that each case must be judged on its own facts, and that its method of expensing overhead costs satisfies this standard. To prove its point, petitioner relies upon two "tests" which it ran to check its method. Both "tests" were applied only to petitioner's Gage Block Department. Petitioner claims that, because the major portion of respondent's adjustments are allocable to that department, they are therefore wrong in their entirety and, in any event, the "tests" preclude a change in the accounting method of that department.

We see no need to indulge in a detailed mathematical exposition of these "tests," because the fact is that, even if it were appropriate for us to attach critical importance to such accounting by analogy (an issue which we do not decide), the "tests" simply do not support petitioner's position. At trial, petitioner's accountant testified that the application of a "net profit test," based upon the difference between the per-unit sales price and the per-unit cost, would have produced an annual per-unit profit ranging from 4 to 7 percent during the years 1961 through 1964. On brief, respondent attempted a detailed reconstruction of the "net profit" test. In reply, petitioner countered with a detailed calculation showing a per-unit loss for each year, but no attempt was made to explain the obvious discrepancy between this calculation and the testimony of its accountant. As set forth in our findings of fact, our own analysis indicates that a correct application of the test would have produced a range from a slight loss to a 5.8-percent per-unit profit.

Aside from the apparent inadequacy of petitioner's calculation, the "net profit test" proves nothing except that petitioner chose an acceptable selling price for its gage blocks. Nothing in the test indicates whether overhead cost in producing each unit, or, for that matter, the cost of direct labor and materials, should be deducted in the year spent or in the year the unit is sold. Moreover, the underlying assumption of the test is that profit should be computed by lining up average expenses per unit with average sales price per unit. Such assumption is directly contrary to petitioner's main contention. Indeed, the test supports what respondent seeks to require of petitioner, namely, to postpone the deduction of overhead expenses until such time as the pertinent units are sold.

Petitioner's second test is called the "retail method of inventory pricing." [6] In this test, petitioner attempted to derive a "value" for the November 30, 1960, closing inventory of the Gage Block Department based on petitioner's experience in fiscal years 1961–1965. As petitioner points out, the figure of $77,808.34 thus derived [7] is compa-

---

[6] The retail method was used by the taxpayer in *E. W. Bliss Co.* v. *United States,* 224 F. Supp. 374 (N.D. Ohio 1963), affd. 351 F. 2d 449 (C.A. 6, 1965).

[7] Respondent came up with a quite different result in applying this test. Respondent's version is in error, however, because respondent failed to include overhead costs anywhere in its figures.

rable with the $75,541.91 figure for the gage block inventory derived by utilizing petitioner's method of accounting, as well it should. Leaving aside the question whether petitioner, who was not a retailer, can properly use the "retail method" test (see sec. 1.471-8, Income Tax Regs.), the difficulty is that the test assumes the very thing petitioner is attempting to prove, namely, that overhead costs should not be included in the value of inventory. All that petitioner's "retail method" proves is that two slightly different methods can result in substantially similar values for inventory if both assume the point at issue.

Our analysis disposes of petitioner's suggestion that the change in accounting method proposed by respondent should in no event be applied to its Gage Block Department because to do so would cause that department to operate at a loss. Aside from the question whether that department was sufficiently separate to permit of a different accounting treatment for tax purposes (as to which the record is not clear), petitioner's calculation is based upon a simple fallacy; it has deducted overhead costs twice, by expensing them and also adding them to inventory.

In view of the foregoing, we conclude that respondent's requirement that petitioner change its accounting method so as to include overhead costs in valuing its inventories should be sustained.

We turn now to the second area of problems, namely, what adjustments should be made with respect to the valuation of petitioner's inventory.

In dealing with these problems, we are faced with a plethora of decisions involving both the issues directly involved herein and related issues. It would be idle to attempt to reconcile all of the cases, for some turn on fine distinctions, others reflect the difficulties which many courts have had in evolving the proper approach to the issues involved, and some were decided before, and some after, the advent of section 481. See, e.g., *Commissioner* v. *Schuyler*, 196 F. 2d 85 (C.A. 2, 1952), affirming a Memorandum Opinion of this Court, and *Commissioner* v. *Dwyer*, 203 F. 2d 522 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court, and cases cited therein, the first distinguishing and the second overruling *William Hardy, Inc.* v. *Commissioner*, 82 F. 2d 249 (C.A. 2, 1936); *Caldwell* v. *Commissioner*, 202 F. 2d 112 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court; *D. E. Alexander*, 22 T.C. 234 (1954); *Clement A. Bauman*, 22 T.C. 7 (1954); *David W. Hughes*, 22 T.C. 1 (1954); compare *Paul H. Travis*, 47 T.C. 502 (1967); *E. Morris Cox*, 43 T.C. 448 (1965); *Fruehauf Trailer Co.*, 42 T.C. 83 (1964), affd. 356 F. 2d 975 (C.A. 6, 1966), certiorari denied 385 U.S. 822; *Estate of John A. Biewer*, 41 T.C. 191 (1963), affd. 341 F. 2d 394 (C.A. 6, 1965); *Fred P. Pursell*, 38 T.C. 263 (1962), affirmed per curiam 315 F. 2d 629 (C.A. 3, 1963); and *Ezo Products Co.*, 37

T.C. 385 (1961); with *P. A. Birren & Son* v. *Commissioner*, 116 F. 2d 718 (C.A. 7, 1940), affirming a Memorandum Opinion of this Court; *Stanford R. Brookshire*, 31 T.C. 1157 (1959), affd. 273 F. 2d 638 (C.A. 4, 1960), certiorari denied 363 U.S. 827; and *Frank G. Wikstrom & Sons, Inc.*, *supra*. It is sufficient to note that, as will subsequently appear, certain general principles emerge which serve as guideposts to our decision herein.

Initially, it is necessary to clear away some of the underbrush resulting from the manner in which the deficiency notice was constructed. Respondent reconstructed petitioner's inventory for the taxable years involved herein—namely, 1960, 1961, and 1962—by including overhead costs in opening and closing inventory except for 1960. For that year, respondent did not include such costs in opening inventory, on the ground that the amount thereof was precisely offset by the adjustments permitted under section 481(a).[8] This shortcut treatment of the section 481 adjustments by respondent has blurred the arguments of the parties on brief with respect to the problem confronting us. It is well settled that, with certain exceptions where the first taxable year of a taxpayer is involved, a change of accounting method by respondent requires that opening inventory be computed on the same basis as closing inventory and nothing in section 481 requires or permits otherwise. *Commissioner* v. *Dwyer, supra; Commissioner* v. *Schuyler, supra; Fruehauf Trailer Co., supra;* cf. *D. E. Alexander, supra.* Thus, in point of fact, as respondent concedes on brief, a proper theoretical approach requires opening inventory for 1960 first to be computed on the same basis as closing inventory and *then* modified to take into account the section 481 adjustments.

We pass next to the question of the adjustments which respondent is permitted to make under section 481(a). Petitioner maintains that no such adjustments are permitted, on the ground that they involve a mere correction, as opposed to a change of accounting method, and therefore section 481 is inapplicable, relying on *Wingate E. Underhill*, 45 T.C. 489 (1966). Cf. also *Walter H. Potter*, 44 T.C. 159 (1965).

Section 1.481-1(a)(1), Income Tax Regs., specifically provides that "A change in method of accounting to which section 481 applies includes * * * a change in the treatment of a material item." We think

---

[8] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

it clear that the exclusion of overhead costs in valuing inventory is an erroneous method of accounting involving a material item. Cf. *Amos-Thompson Corp.* v. *United States*, an unreported case (S.D. Ind. 1964, 15 A.F.T.R. 2d 071, 64–2 U.S.T.C. par 9875) ; *Fruehauf Trailer Co.*, *supra* at 103; *Fred P. Pursell, supra.* See also *Photo-Sonics, Inc.*, *supra*, particularly at page 929, footnote 2, where the same change in the method of treating overhead was involved and the taxpayer did not even contest the applicability of section 481. We find no merit in petitioner's contention in this regard.

We are still left with the question of the extent to which adjustments under section 481(a) may be made. Clearly, they may be made with respect to the taxable periods subsequent to May 1, 1957, when this petitioner originally commenced business. Equally clearly, section 481 may be applied only to the petitioner and not to make adjustments with respect to its predecessor. *E. Morris Cox, supra; Ezo Products Co., supra;* cf. *Joseph E. Seagram & Sons, Inc.*, 46 T.C. 698 (1966), on appeal (C.A. 2, Feb. 20, 1967).

But this does not settle the matter. Under section 481, the determination of the petitioner's liability *for the taxable year 1960* must take into account adjustments for prior taxable years to which that section applies. The process of computing these adjustments involves reconstructing petitioner's opening and closing inventories for the taxable years 1957, 1958, and 1959. Unquestionably, overhead costs must be included in petitioner's opening and closing inventories for 1958 and 1959 and the closing inventory for 1957. The critical question which we must resolve is whether such costs must be also included in opening inventory for 1957. In so doing, we must decide which of two general principles applies. The first principle requires that opening inventory be computed on the same basis as closing inventory. See p. 197 *supra.* The second principle requires that, pursuant to section 362, in a tax-free exchange such as occurred herein when the predecessor partnership transferred its assets to petitioner, the basis of the transferred assets in the hands of the latter is the same as it was in the hands of the former. In implementing this second principle, it has been held that the basis of initial opening inventory in the hands of the transferee corporation should not be adjusted in order to correct for an erroneous method of accounting for that inventory by the predecessor transferor. *Ezo Products Co., supra; Frank G. Wikstrom & Sons, Inc.*, *supra;* see *Fred P. Pursell, supra* at 276; but cf. *Manhattan Building Co.*, 27 T.C. 1032 (1957), a case not involving inventories, where the taxpayer was permitted to make changes in the basis of property to take into account errors in the tax treatment of prior transactions involving the property. None of these decisions dealt with the interrelationship of the two principles but this question was discussed in

*Textile Apron Co.*, 21 T.C. 147 (1953), where we said that the principle respecting the uniform method of valuing opening and closing inventory for a given taxable year does not apply where the inventory was acquired in a tax-free exchange.

Petitioner argues that, on the basis of the agreed cumulative method utilized in computing petitioner's inventory, the refusal of respondent to make an adjustment based on overhead costs related to its opening inventory for the taxable year 1957 in effect allows respondent to tax $6,643.26 in overhead costs expensed by its predecessor during the period January 1, 1954, to April 30, 1957, and $10,087.47 in such costs thus expensed prior to January 1, 1954. Thus, petitioner insists that it is being taxed on $16,730.73 which is properly attributable to periods to which section 481 does not apply, because of the decisions that that section may only be applied to the petitioner-taxpayer and because that section, by its terms, precludes pre-1954 adjustments where a change of accounting method is made by the respondent,[9] as is the case herein.

The fact of the matter is that these asserted consequences are more apparent than real. In the first place, it can be argued that overhead costs are incurred only after inventory is acquired and that, *as to this petitioner*, there were no overhead costs in its May 1, 1957, opening inventory. See *Frank G. Wikstrom & Sons, Inc.*, *supra* at 361. Such an approach, together with the fact that petitioner acquired the inventory through the issuance of its own shares, justifies the conclusion that petitioner is not being deprived, economically or financially, of the benefit of any actual payment in excess of its predecessor's basis. Secondly, it is not necessarily true that there are any overhead costs actually attributable to closing inventory in the hands of petitioner's predecessor which were incurred by the predecessor prior to January 1, 1954. It seems likely (and the record does not indicate otherwise) that all of the inventory acquired prior to January 1, 1954, was disposed of by the predecessor prior to April 30, 1957, so that the closing inventory on that date represented only acquisitions since January 1, 1954. Indeed, theoretically all of the inventory acquired prior to January 1, 1957, could have been disposed of by petitioner's predecessor prior to April 30, 1957, so that the closing inventory on that date included only acquisitions during the last 4-month taxable period. See the lucid discussion of Judge Learned Hand as to how inventories are handled in *Commissioner* v. *Dwyer*, *supra;* see also *David W. Hughes*, *supra* (Judge Opper's dissenting opinion).

We recognize that, if petitioner had never been formed, and the predecessor partnership had continued in business, and the issue before us involved a comparable change in the latter's method of accounting for overhead costs, respondent would have been precluded by the

---

[9] Sec. 481(a)(2) expressly permits pre-1954 adjustments only where the change of accounting method is not initiated by the respondent.

express provisions of section 481 from making any adjustments with respect to periods prior to January 1, 1954, and would, under the applicable decisions, have been required, in making the necessary computations, to include overhead costs both in the opening inventory and closing inventory for the taxable year 1954. Thus, petitioner—a taxpayer separate and distinct from its predecessor—appears to fare worse than its predecessor would have. We also recognize that, in point of fact, the tax benefit of the deductions for overhead costs taken by petitioner's predecessor may not have been as great as the tax burden which our rationale now requires petitioner to bear, e.g., because the partners may have been in lower tax brackets or the partnership may have operated at a loss in some of the prior years. Moreover, if the ownership of petitioner's stock had changed prior to the taxable years herein involved, the economic effect of the tax benefit would not inure to, nor would the tax burden fall upon, the same persons. But these are nothing more than some of the myriad of different consequences which may result from a change to the corporate form of doing business or from the acquisition of stock of a corporation rather than corporate assets.[10]

The underlying purpose of section 481 was to liberalize the rules laid down by the decided cases and to permit respondent to make adjustments which up until that time were denied to him. See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 65, 307 (1954); H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 50, A164 (1954); see also *Graff Chevrolet Co.* v. *Campbell,* 343 F. 2d 568, 572 (C.A. 5, 1965); Note, "Problems Arising from Changes in Tax-Accounting Methods," 73 Harv. L. Rev. 1564 (1960). Moreover, as was pointed out in *Graff Chevrolet Co.* (p. 572):

There is no necessary conflict between section 481 and the statute of limitations. Until the year of the accounting change, the Commissioner has no claim against the taxpayer for amounts which the taxpayer should have reported in prior years. The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change. "When a taxpayer uses an accounting method which reflects an expense before it is proper to do so or which defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it. Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest." Note, Problems Arising from Changes in Tax-Accounting Methods, 73 Harv. L. Rev. 1564, 1576 (1960).

---

[10] We note that, with respect to years in which a subchap. S election (see secs. 1371–1378) has been made, it may be possible to confine respondent's adjustments in a case of the type involved herein to post Jan. 1, 1954, periods. Cf. *Paul H. Travis,* 47 T.C. 502; see *E. Morris Cox,* 43 T.C. 448, 459.

We do not have before us an attempt by the respondent to impose a tax in 1960 on amounts which had previously been taxed in barred years, with double taxation the result. Cf. *John Wanamaker Philadelphia, Inc.* v. *United States*, 359 F. 2d 437 (Ct.Cl. 1966). On the contrary, we are confronted with an attempt by petitioner to resist the application of section 481 and the accepted rule as to the basis of inventory acquired in a tax-free exchange in order to obtain our blessing of a double deduction. Under these circumstances and taking into account the progressive legislative design over the years to ameliorate the effects of the statute of limitations through the enactment of section 481, as well as the mitigation provisions of section 1311 *et seq.*, we are not disposed to accept petitioner's arguments and depart from the framework established by the decided cases. To do otherwise would require us to import into section 351 exchanges a concept of continuity of taxpayers which has clearly been rejected. *Joseph E. Seagram & Sons, Inc.*, *supra; Ezo Products Co.*, *supra; Akron, Canton & Youngstown Railroad Co.*, 22 T.C. 648 (1954); *Textile Apron Co.*, *supra*. We conclude, therefore, that, although section 481 is the vehicle by which respondent's adjustments are to be made, he may nevertheless, in computing those adjustments, take advantage of a rule available to him without regard to that section. *Ezo Products Co.*, *supra; Textile Apron Co.*, *supra; Frank G. Wikstrom & Sons, Inc.*, *supra*.

Whether one adopts respondent's short-cut method or utilizes a two-step technique, as we have done, in making the section 481 adjustments, the result herein in terms of the tax due is the same in view of petitioner's agreement as to the amounts of overhead costs involved and the substance of our rationale, and in light of the fact that the tax rates applicable to petitioner were the same in all taxable years commencing with 1957.

*Decision will be entered for the respondent.*