**Dean R. SHORE and Wilma V. Shore, Petitioners/Appellants**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent/Appellee.**

No. 78–2655.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1980.

Decided Oct. 30, 1980.

---

Richard W. Dietrich, Dietrich, Glasrud & Jones, Fresno, Cal., on brief; Robert A. Maller, Jr., Fresno, Cal., for petitioners/appellants.

Joan I. Oppenheimer, Dept. of Justice, Washington, D.C., for respondent/appellee.

Before GOODWIN, FLETCHER and CANBY, Circuit Judges.

CANBY, Circuit Judge.

Taxpayers appeal from a decision of the Tax Court, 69 T.C. 689, assessing a deficiency of $53,903 against them for the year 1970. The Tax Court determined that the individual taxpayers "ceased to engage in a trade or business" within the meaning of Revenue Procedure 70–16 when they incorporated their proprietorship pursuant to § 351 of the Internal Revenue Code. The taxpayers were therefore required to accelerate certain income adjustments that they otherwise would have been entitled to spread forward through succeeding years. We agree with the Tax Court's interpretation of the Revenue Procedure and affirm.

I.

Taxpayers, husband and wife, owned and operated an accoustical and insulation business as a sole proprietorship. They used a cash receipt and disbursement method of accounting. In 1968, in accordance with § 481[1] of the Internal Revenue Code and Rev.Proc. 67–10, 1967–1 C.B. 585[2], they

---

1. § 481. Adjustments required by changes in method of accounting.

(a) General rule. In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")

(1) If such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply

unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

2. Rev.Proc. 67–10.

Section 1. Purpose.

This revenue procedure provides an administrative procedure whereby taxpayers may expeditiously obtain consent to change their overall method of accounting from the cash receipts and disbursements method to an accrual method for Federal income tax purposes. Taxpayers complying with the provisions hereof will be deemed to have obtained the consent of the Commissioner of the Internal Revenue to change their method of accounting.

changed to an accrual system. As a result of that change, the sole proprietorship realized a net increase of income under § 481 of $142,994.43. Under Rev.Proc. 67–10 and § 481(c) of the Code [3], taxpayers were entitled to spread this net increase in income over a ten–year period, reporting one–tenth of it in each of ten successive years. Under Rev.Proc. 70–16, 1971–1 C.B. 441 [4], however, the taxpayer enjoying the benefit of extended adjustments under § 481 has to report the entire balance of the adjustment in the year in which he "ceased to engage in a trade or business."

In 1970, taxpayers incorporated their sole proprietorship, exchanging all of their business property for all of the corporation's stock. Under § 351 [5], they realized no gain on this transfer. The taxpayers continued to work in the accoustical and insulation business, but as employees or officers of the new corporation rather than as sole proprietors. They continued to report on their individual (joint) income tax return for 1970 and the following years one–tenth of the adjustment that they were previously spreading forward under § 481. The Com-

missioner determined that the taxpayers, as individuals, had ceased their trade or business within the meaning of Rev.Proc. 70–16. He accordingly required that all § 481 income be accelerated and reported by the individual taxpayers in the year 1970. The Tax Court upheld the Commissioner's determination and the taxpayers appealed.

## II.

Taxpayers offer several theories to support their position that the adjustment amount should not be accelerated and considered as income in the year of incorporation. They rely initially on the literal, commercial meaning of the words "cease to engage in a trade or business." Taxpayers contend that they are still in the accoustical and insulation business; only the economic structure of the enterprise has changed. They interpret the phrase "cease to engage in a trade or business" as requiring a total withdrawal by the taxpayers from the functional and legal operation of the business.

The taxpayers also argue that the meaning of "cease to engage in a trade or busi-

---

Section 4. Manner of effecting the change.
Any taxpayer changing from the overall cash receipts and disbursements method to an accrual method under this revenue procedure shall effect the change as follows . . .
(2) Take into account in computing taxable income for the taxable year of change and for each of the nine succeeding taxable years one–tenth of the net amount of the adjustments required under § 481(a) of the Code. . . .

**3.** (c) Adjustments under regulations.
In the case of any change described in subsection (a) the taxpayer may, in such manner and subject to such conditions as the Secretary may by regulations prescribe, take the adjustments required by subsection (a)(2) into account in computing the tax imposed by this chapter for the taxable year or years permitted under such regulations.

**4.** Rev.Proc. 70–16
Section 1. Purpose.
The purpose of this Revenue Procedure is to provide for the treatment of the balance of the adjustment required under section 481(a) of the Internal Revenue Code of 1954 where the taxpayer ceases to engage in a trade or business during the ten–year period over which the total

adjustment is to be taken into account under Revenue Procedure 67–10, C.B. 1967–1, 585.

Section 3. Application.
A taxpayer who has changed his method of accounting under the provisions of Revenue Procedure 67–10 and ceased to engage in a trade or business (otherwise than in a transaction to which section 381 of the Code applies) during the ten–year period over which the adjustment is to be spread must attach a statement to the Form 3115 filed with the return for the taxable year in which he ceased to engage in a trade or business showing the balance of the adjustment not previously taken into account in computing taxable income as the portion of the adjustment to be taken into account in that year.

**5.** § 351. Transfer to corporation controlled by transfer.
(a) *General rule.*
No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. . . .

ness" can be gleaned from § 481(b)(4)(C) [6] which was the predecessor of Rev.Proc.'s 67–10 and 70–16. Under § 481(b)(4)(C) a taxpayer lost the benefits of the ten–year spread when he ceased a trade or business or died. From this provision taxpayers extract an implication that the underlying purpose of Rev.Proc. 70–16 is to allow the Commissioner to accelerate payment when collectability is threatened. Collectability is not threatened here, taxpayers argue, because they are still engaged in a trade or business in a commercial sense.

We do not think that the Revenue Procedure supports the interpretation taxpayers would place on it. In literal terms it provides for acceleration when the *taxpayer* ceases his trade or business. The focus of the Procedure is on the continuity of the taxpayer, not on the continuity of the enterprise. The distinction between a corporation and its preceding proprietorship or partnership is clearly drawn in instances when a corporation newly formed pursuant to § 351 changes its method of accounting and realizes additional income. Section 481 permits corporations to make adjustments to prior taxable years, but new § 351 corporations do not qualify because they have no prior taxable years. For purposes of § 481, incorporation creates a new tax entity which cannot be extended back to the preceding business entity. *Hempt Bros. Inc. v. United States*, 490 F.2d 1172 (3rd Cir.) *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974); *Dearborn Gage Co. v. Commissioner*, 48 T.C. 190 (1967); *Pittsfield Coal & Oil Co. v. Commissioner*, 25 Tax Ct.Memo Dec. 11 (1966); *Ezo Products Co. v. Commissioner*, 37 T.C. 385 (1961).

It is true that no cases appear to have dealt with the precise question whether a taxpayer by incorporating ceases to engage in a trade or business. However, the Supreme Court has held in other contexts that stockholders are not engaged in the trade or business of their corporation, even if they devote all their time to that business. *Whipple v. Commissioner*, 373 U.S. 193, 83 S.Ct. 118, 10 L.Ed.2d 288 (1963); *Burnet v. Clark*, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397 (1932). "A corporation and its stockholders are generally to be treated as separate entities. Only under exceptional circumstances–not present here–can the differences be disregarded." *Burnet v. Clark*, 287 U.S. at 415, 53 S.Ct. at 208; *see also Moline Properties v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943).

Nor is taxpayers argument from § 481(b)(4)(C) convincing. While it is true that the section was used in formulating Rev.Proc. 67–10 and 70–16, neither the statutory language nor the legislative history supports the taxpayers' position. The Senate report on § 481(b)(4)(C) notes that "this ten–year spread for net adjustments resulting in an increase in income of more than $3,000 is cut off where the taxpayer's *status* changes." S.Rep. 1983, 1958–3 C.B. 1967 (emphasis added).

Taxpayers final argument is that accelerating the adjustment defeats the purpose of § 351. This argument must also be rejected.

To be sure, one of the purposes of § 351 was to permit incorporation of an existing business with minimal tax consequences.[7] This does not, however, ensure that the transaction will be free from tax resulting from application of other code sections. *See Hempt Bros. Inc., supra.* If taxpayers had turned their proprietorship into corporate form, had retained control, but had not participated in its affairs and had gone as individuals into some other line of work, they would by any definition have ceased to engage in their former trade or business. They would clearly be subject to accelera-

---

**6.** § 481(b)(4)(C) Limitations on years in which [pre–1954] adjustments can be taken into account. The net amount of any adjustment ... to the extent not taken into account in prior taxable years ...

   (i) in the case of a taxpayer who is an individual shall be taken into account in the taxa-

ble year in which he dies or ceases to engage in a trade or business ....

**7.** However, not all § 351 incorporations are tax free. *See generally* "Note, § 351 of the Internal Revenue Code" and "Mid–Stream Incorporations", *38 U.Cin.L.Rev.* 96, 106–112 (1969).

tion of income, and the fact that they had undergone a § 351 incorporation would not protect them from it.

It is true that an acceleration makes the tax consequences of incorporation more adverse than those of non–incorporation. The Tax Court in *Dearborn Gage Company, supra,* noted a similar disadvantage caused by a corporation succeeding to a proprietorship but observed that "these are nothing more than some of the myriad of different consequences that may result from a change to the corporate form of doing business ..." 48 T.C. at 200.

In some sections of the Code, Congress has expressly provided that taxable gain from certain transactions shall not exceed the gain calculated under § 351. 26 U.S.C. §§ 1250(d)(3), 1251(d)(3) and 1254(b). Congress could have written the same kind of protections into § 481 but has not done so. We think the Tax Court was correct in concluding that no such protection existed, and that upon incorporation taxpayers had ceased to engage in their former trade or business.[8]

Affirmed.

---

8. Subsequent to the incorporation involved in this case, the Commissioner issued a revenue ruling that expressly provided for acceleration of a § 481 adjustment in the year that a proprietorship incorporated. Rev.Rul. 77–264, 1977–2 C.B. 187. This position was then incorporated in Revenue Procedure 80–5, adopted while this case was pending on appeal. Revenue Procedure 80–5, section 3.09(c), provides:

"With respect to a sole proprietor:
If the taxpayer ceases to engage in the trade or business, to which this adjustment ... relates, at any time prior to the expiration of the 'spread period' [ten years] ... the balance of the adjustment not previously taken into account in computing taxable income shall be taken into account in such year. A sole proprietor ceasing to engage in the trade or business includes the incorporation of

such trade or business in a transaction to which section 351 of the Code applies; see Rev.Rul. 77 -264, 1977–2 C.B. 187."
Application of this Ruling and Revenue Procedure would clearly dictate the result reached by the Tax Court and affirmed by us today. Revenue Rulings and Procedures are normally given retroactive application, 26 U.S.C. § 7805(b) (1970). *See Wilson v. United States,* 588 F.2d 1168 (6th Cir. 1978); *Anderson, Clayton and Company v. United States,* 562 F.2d 972 (5th Cir. 1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *but see Chock Full O'Nuts Corp. v. United States,* 453 F.2d 300 (2nd Cir. 1971). We have no need in this case, however, to depend upon such retroactivity because we have concluded that the Tax Court was correct in its interpretation of the preceding Revenue Procedure 70–16.