Estate of William C. Shore, deceased, Helen C. Shore, Administratrix v. Commissioner.
Estate of Shore v. Commissioner
Docket No. 51431.
United States Tax Court
T.C. Memo 1956-75; 1956 Tax Ct. Memo LEXIS 220; 15 T.C.M. (CCH) 391; T.C.M. (RIA) 56075; March 28, 1956
R. C. Scott, Esq., Cornelia, Ga., for the petitioner. H. Fenton Day, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency of $680.44 in the income tax of petitioner for the taxable period January 1, 1950, to October 15, 1950. The issues involved are: (1) Whether petitioner, a cash basis cattle feeder, may properly deduct the cost of cattle in the year of purchase, or whether he must defer recovery of cost until the cattle are sold; (2) Whether, *221 if petitioner is required to defer recovery of cost until the cattle are sold, the Commissioner is estopped from determining the instant deficiency by virtue of having accepted returns for prior years in which the cost of cattle was deducted currently; and (3) Whether, in any event, under the circumstances of this case, petitioner may avail himself of a net operating loss carry-over from the years 1948 and 1949. Findings of Fact Some of the facts were stipulated, and are so found. The stipulation of facts is incorporated herein by this reference. William C. Shore, sometimes hereinafter referred to as petitioner, died on October 15, 1950. An income tax return for the period January 1, 1950, to October 15, 1950, was filed on his behalf by Helen C. Shore, his widow and administratrix of his estate, with the collector of internal revenue for the district of Georgia. Prior to his death, petitioner had resided in Baldwin, Georgia, where he had been engaged in fattening beef, operating a peach orchard, and running a general mercantile business. Petitioner's beef business consisted of purchasing steers, fattening them to prime condition, and selling them. He did not breed cattle *222 or keep dairy animals. Petitioner usually bought calves or half-grown steers, and pastured them in a field the capacity of which was approximately 50 head. The fattening period was normally in excess of 8 months, although it was occasionally less. Petitioner did not purchase cattle at any particular season of the year, nor did he sell them at any particular time; he waited until a number of steers had reached prime condition, and then sold them, usually in lots of 8. When petitioner purchased a steer, he did not tag it or segregate it. Steers were often held over from one year to the next, and when any given steer was sold, it was not possible to ascertain whether it had been purchased in the year of sale or in a prior year. At January 1, 1950, petitioner had about 50 head of cattle on hand, he purchased 44 head during the period January 1 to October 15, and at his death there were on hand 47 steers. In the return for the taxable period in controversy, gross receipts from sales of cattle in the amount of $10,059.83 were reported, and a deduction of $4,299.21 was claimed as the cost of the 44 head of cattle purchased during that period. Respondent disallowed the deduction with the *223 explanation that the cost of cattle may only be recovered in the year sold, and that no information had been supplied as to the cost of the cattle sold between January 1 and October 15, 1950. Petitioner computed income tax by deducting the cost of all cattle purchased during any year from the gross sales price of all cattle sold during that year. In his individual income tax return for the year 1948 petitioner reported gross receipts from the sale of cattle in the amount of $4,927.02, he deducted $4,954.86 as cost of cattle purchased in that year, and he reported a net loss from all business operations of $4,539.91. In his 1949 individual income tax return, petitioner reported gross sales of cattle in the amount of $2,429.88, a deduction of $3,912.23, representing cost of cattle purchased in that year, and a loss from all business operations of $2,663.44. These returns were accepted by the Commissioner and those years are not now in issue before us. The cost of the cattle sold by petitioner during the taxable period January 1 to October 15, 1950, was $3,525. Opinion The first question to be decided is whether petitioner, a cash basis cattle feeder, must defer recovery of *224 cost of cattle sold until the year of sale. Section 29.22(a)-7 of Regulations 111 [1] requires cash basis farmers to include in gross income profits from the sale of livestock purchased (as opposed to raised), and provides that this profit is to be "ascertained by deducting the sales price in the year in which the sale occurs, * * *". We sustained the validity of this regulation in D. E. Alexander, 22 T.C. 234. In that case the facts were substantially identical to those in the instant case. There, a cash basis cattle feeder had been deducting cost of cattle in the year of purchase and was required by the Commissioner to postpone recovery of cost until the year of sale. We sustained the Commissioner. We rejected in that case the argument advanced by petitioner herein that to require a farmer to defer recovery of cost of cattle sold until the year of sale would force him to maintain a hybrid system of accounting or to report income on an inventory-accrual basis, whereas he has the option, under Regulations 111, section 29.22(c)-6, to report income on a cash receipts and disbursements basis. Therefore, on this issue, we sustain the respondent. The issue of whether petitioner *225 is entitled to a deduction for cost of cattle sold is taken up below. *226 Petitioner urges an alternative argument, that, if he can properly be required to defer recovery of cost of cattle sold until the year of sale, nevertheless, the Commissioner is estopped from determining the deficiency herein by virtue of having accepted returns in prior years in which cost of cattle purchased was deducted currently. We disagree with petitioner. Acceptance of incorrect returns in an earlier year does not estop the Commissioner from challenging the correctness of items similarly reported in a later year. Lillian T. Savage, 31 B.T.A. 633, revd. on another point, 82 Fed. (2d) 92; Caldwell v. Commissioner, 202 Fed. (2d) 112; Mt. Vernon Trust Co. v. Commissioner, 75 Fed. (2d) 938. The Commissioner's failure to challenge an incorrectly reported item may be attributable to oversight, error, or lack of information rather than to acquiescence in petitioner's system of accounting. Niles Bement Pond Co. v. United States, 281 U.S. 357; South Chester Tube Co., 14 T.C. 1229. We therefore hold that the Commissioner was not estopped from asserting the instant deficiency. Petitioner argues that in any *227 event the net operating losses of $4,539.91 and $2,663.44, incurred in 1948 and 1949, respectively, should be carried over to the year 1950. The pertinent provisions of section 122(b)(1)(A) and (b)(2)(C) of the Internal Revenue Code of 1939 are set forth in the margin. [2] The evidence does not disclose the net income, if any, of petitioner for the taxable years 1946 and 1947. Lacking such proof, we are without facts to adjust the net operating losses in 1948 and 1949 for carry-over purposes in the taxable period. Therefore, for failure of proof, we must hold that petitioner cannot avail himself of a net operating loss carry-over from either 1948 or 1949. *228 Respondent did not allow petitioner any deduction for cost of cattle sold in the year 1950. Even assuming that all cattle sold in 1950 had been purchased in prior years and that deductions had previously been allowed therefor, petitioner is nevertheless entitled to a deduction for the cost of cattle sold in the taxable period in issue. D. E. Alexander, supra. Although cost figures for total cattle purchased for the years 1948 and 1949 are in evidence, we have no evidence as to exactly how many steers were purchased in each of those years. Forty-four steers were purchased in 1950 at a total cost of $4,299.21, but the cattle sold in 1950 may have been purchased in earlier years when prices were lower. There were about 50 head on hand at January 1, 1950. Taking into account the stipulated figures of 44 head bought during the period and 47 head on hand at October 15, that would mean that about 47 head were sold during the period. Using our best judgment, on the entire record before us, and bearing heavily on petitioner for his failure of proof, we have allowed petitioner a deduction of $3,525 on account of cost of cattle sold in the year 1950. Cohan v. Commissioner, 39 Fed. (2d) 540. *229 Decision will be entered under Rule 50. Footnotes
1. Sec. 29.22(a)-7. - Gross Income of Farmers. - A farmer reporting on the basis of receipts and disbursements (in which no inventory to determine profits is used) shall include in his gross income for the taxable year (1) the amount of cash or the value of merchandise or other property received during the taxable year from the sale of live stock and produce which were raised during the taxable year or prior years, (2) the profits from the sale of any live stock or other items which were purchased, and (3) gross income from all other sources. The profit from the sale of live stock or other items which were purchased after February 28, 1913, is to be ascertained by deducting the cost from the sales price in the year in which the sale occurs, except that in the case of the sale of animals purchased as draft or work animals or solely for breeding or dairy purposes and not for resale, the profit shall be the amount of any excess of the sales price over the amount representing the difference between the cost and the depreciation theretofore allowed (but not less than the amount allowable) in respect of such property as a deduction in computing net income.↩
2. SEC. 122. NET OPERATING LOSS DEDUCTION. * * *
(b) Amount of Carry-back and Carry-over. - (1) Net Operating Loss Carry-back. - (A) Loss for Taxable Year Beginning Before 1950. - If for any taxable year beginning after December 31, 1941, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two proceeding taxable years, * * *. (2) Net Operating Loss Carry-over. - * * *
(C) Loss for Taxable Year Beginning After December 31, 1947, and Before January 1, 1950. - If for any taxable year beginning after December 31, 1947, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years. * * *. For the purpose of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1947, and before January 1, 1950, shall be reduced by the sum of the net income for each of the two preceding taxable years * * *.↩