PAUL O. HUBER and MARY J. HUBER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Huber v. Commissioner
Docket Nos. 15839-82, 24632-82, 26291-82, 30215-82.
United States Tax Court
T.C. Memo 1984-593; 1984 Tax Ct. Memo LEXIS 79; 49 T.C.M. (CCH) 57; T.C.M. (RIA) 84593; November 9, 1984. John P. Sampson, for the petitioners. Joel A. Lopata, for the respondent. FAY MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Petitioners
Year
Deficiency
Paul O. Huber and
1977
$1,749.00
Mary J. Huber
Phillip O. Boyer and
1977
1,533.00
Marian E. Boyer
David L. Gillette and
1978
1,131.70
Doris P. Gillette
Earl V. Gritton and
1977
2,250.00
Helen M. Gritton
D. Wilson Hales and
1977
3,801.00
Anne Hales
James R. Lindsley and
1977
2,070.00
Una F. Lindsley
Gregory A. Miller, Jr.
1977
760.00
George W. Nixon and
1976
2,347.79
Janice M. Nixon
1977
4,100.00
Alan L. Nye and
1978
1,900.00
Beverly B. Nye
Toffie G. Sawaya and
1978
1,908.00
Alice A. Sawaya
Russell J. Smuin and
1976
1,485.00
Evelyn Smuin
1977
630.00
Henry A. Totzke and
1976
6,362.00
Martha V. Totzke
1977
5,188.00
Harvey P. Wheelwright
1977
885.00
and Marilyn G. Wheelwright
Leo S. Bankhead and
1978
1,828.00
Diane C. Bankhead
Jerald H. Bennion and
1978
3,668.00
Constance Bennion
Virgil R. Condon and
1976
7,574.38
Marilyn Condon
J. William DeYoung and
1977
1,044.00
Beth DeYoung
Harold R. Eason and
1976
1,028.00
Rita C. Eason
Val B. Johnson and
1977
2,430.90
Janet P. Johnson
Rex M. Kohler and
1977
5,853.00
Ivy Jean Kohler
J. Kirk Moyes and
1977
5,156.00
Sharyl B. Moyes
Robert Crouch Newman
1976
1,180.00
and Eleanor R. Newman
Alan L. Nye and
1976
4,545.00
Beverly B. Nye
Ralph Nye
1976
8,554.00
O & M Plumbing &
1977
1,928.00
Heating Co.
Henry A. Totzke and
1978
16,078.00
Martha V. Totzke
G. Jerry Hayes
1978
9,950.00
and Joyce R. Hayes
H. Norman Hayes
1978
10,563.00
H. Norman Hayes
1979
2,217.00
and Maurine Hayes
*81 These cases have been consolidated for trial, briefing, and opinion. After concessions, the issues for decision are whether petitioners, as limited partners, are entitled to deductions for (1) their share of amounts paid by their respective partnerships for management fees, (2) their share of amounts paid by their respective partnerships for consulting fees, (3) their share of amounts paid by their respective partnerships for standing crops, (4) their share of amounts paid by their respective partnerships for rockpicking and land preparation expenses, and (5) depreciation in excess of the amount allowed by respondent. BACKGROUND FINDINGS OF FACT Some of the facts are stipulated and found accordingly. All petitioners resided in Utah when they filed their petitions herein. From 1974 through 1976 Paul Richins formed several corporations for the general purpose of engaging in investment and financial activities [2] (herein Paul Richins and his corporations are collectively referred to as "Richtron"). During this period Richtron formed and was the general partner of 29 limited partnerships in Utah. Petitioners herein are limited partners in 12 of those limited *82 partnerships (herein the partnerships). [3] The purpose of each partnership was to buy a farm in substandard operating condition, make improvements, and operate or lease the farm until it could be sold for a significant profit. Petitioners' reasons for investing in the partnerships were to receive in the first few years large ordinary deductions for farm expenses and then to realize a substantial profit at favorable long-term capital gain rates when the farms were resold. Each farm was initially purchased by Richtron from various third-party farmers and then, with the exception of two farms, [4] resold immediately by Richtron to the partnerships at a profit. For purposes of clarity, we will set forth *83 the facts and opinion relating to each issue separately. Issue 1.Management Fees
FINDINGS OF FACT AND OPINION Each partnership agreement contained a provision that Richtron, as general partner, would receive a management fee equal to 10 percent of the purchase price of the farm on the date the partnership agreement was executed. [5] After this initial payment, Richtron was not entitled to receive a management fee but was to consider its interest in 10 percent of the partnerships' profits as compensation for managing the partnerships.[6] Since none of the partnerships ever realized a profit, Richtron received no compensation for managing each farm other than the initial fee, equal to 10 percent of the purchase price. Prior to purchasingall of the farms, Richtron's research department evaluated *84 several pieces of property. After several farms were selected, Richtron's appraisal department would value each farm based on the engineering department's determination of the condition of the property and the improvements which would be necessary. Richtron then negotiated the sales price and drafted the contracts for both the purchase of the farms and resale of the farms to the partnerships. Richtron also prepared all of the limited partnership agreements. Mr. Richins personally contacted all of the limited partners prior to their investment in the partnerships. In some instances, he met with potential partners up to three separate times. Richtron did not keep records indicating the exact amount of time spent in organizing the partnerships, purchasing the farms, drafting documents, and contacting investors. Richtron has managed all of the farms since they were acquired by the partnerships. Richtron's payroll during the years in issue was approximately $8,000 to $10,000 per month. Each partnership deducted as management fees the amounts paid to Richtron pursuant to the partnership agreements. [7] On their individual tax returns, petitioners claimed a distributive *85 share of the above-reported partnership deductions.In his notices of deficiency, respondent disallowed all of these deductions. The issue is whether any of the so-called "management fees" are deductible by the partnerships. Respondent contends no deductions are allowable since the fees represent nondeductible capital expenses. Petitioners contend the fees are deductible as ordinary and necessary business expenses of the partnerships. For the following reasons, we find for respondent. To be deductible by the partnerships, the fees must satisfy the requirements of section 162(a). [8]Section 162(a) generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In determining *86 whether any of the fees are deductible under section 162(a), "we look to the nature of the services performed [for which the fees were paid] * * * rather than to their designation or treatment by the partnership." Estate of Boyd v. Commissioner,76 T.C. 646, 658 (1981), quoting Cagle v. Commissioner,63 T.C. 86 (1974), affd. 539 F.2d 409 (5th Cir. 1976). Expenditures incurred in connection with the organization and syndication of limited partnerships are capital in nature and, therefore, not currently deductible.[9]Kimmelman v. Commissioner,72 T.C. 294, 304-305 (1979); Wildman v. Commissioner,78 T.C. 943, 958 (1982). Payments for services to be rendered in the future are also not currently deductible. Estate of Boyd v. Commissioner,supra at 667; Bassett v. Commissioner,26 T.C. 619 (1956).Petitioners bear the burden of proving what portion of the fees is allocable to nondeductible capital portions and to deductible expense portions. Rule 142(a); Wildman v. Commissioner,supra. *87 In the instant case, it is clear that Richtron spent a significant amount of time organizing and syndicating the partnerships. Although petitioners argue that no portion of the so-called "management fees" paid to Richtron were for organizational expenses, we disagree. Richtron spent a great deal of time *88 in selecting which farms to purchases, negotiating with the owners, contacting limited partners, and in setting up the partnerships. Althoughno records were kept indicating how much time was spent by Richtron, we find that a portion of the 10 percent of the purchase price paid to Richtron in the first year of each partnership was in fact a payment for organization and syndication expenses and therefore not currently deductible. Furthermore, the evidence also shows that although Richtron provided management services to the partnerships in the years following the initial year of each partnership, it received no payments in such years for its management services. Since the partnerships did not pay any additional management fees to Richtron, it is clear that a singificant portion of the initial fee was intended to be compensation for Richtron's future services. Such portions of the fees are not currently deductible by the partnerships. Petitioners rely on the testimony of one of Richtron's employees who was involved in managing the farms. His testimony consisted of nothing more than bare assertions that the claimed fees were reasonable in relation to the services provided. *89 He failed to provide evidence, however, as to the number of people required to manage the farms or the amount of time that was necessary to provide such services. Thus, petitioners have failed to satisfy their burden of proving that the large amounts their partnerships deducted for management fees, such as $84,730 and $67,500 deducted by Moreland and Richfield, respectively, were deductible business expenses. Rule 142.We are convinced that a large portion of the amounts deducted as management fees was in fact for organizational expenses and future services both of which are not currently deductible expenses, and that the partnerships designated these payments as first-year management fees so that petitioners could get increased ordinary deductions in those years. Although a small portion of the fees may have been for management services provided by Richtron in the year the partnerships took the deductions, we are in no position to allow a deduction for such a portion since petitioners have given us no basis for either valuing the services performed or allocating between deductible and nondeductible expenses. See Wildman v. Commissioner,supra at 960; *90 Estate of Boyd v. Commissioner,supra at 668. Thus, no portion of the fees is deductible by the partnerships. Issue 2.Consulting Fees
FINDINGS OF FACT AND OPINION When Richtron purchased each farm from third parties, a portion of the purchase price was allocated as and for a farming consultation fee to the sellers. Subsequently, in the sales contracts between Richtron and the partnerships, Richtron assigned its right to receive those consulting services to the partnerships. Eight of the partnerships in question did not provide any additional consideration to Richtron for this right nor did they agree to pay the fee. The remaining four partnerships did agree to pay the fee. When negotiating the purchase price of each farm, Richtron introduced the idea of allocating a portion of the purchase price for a consulting fee. In return for this fee, the prior owners of each farm were expected to provide information concerning the farm's crop history, fertilizer program, and other similar information. Prior to negotiating a purchase, however, Richtron itself appraised each farm and determined its crop history, fertilizer program, and overall condition *91 in order to make an offer to the owner. Each partnership deducted the amounts paid to the prior owners of the farms as "consulting fees" on its return in the year the farms were purchased. [10] On their individual returns, petitioners claimed a distributive share of the above-reported partnership deductions. In his notices of deficiency, respondent disallowed all of these deductions. The issue is whether the so-called "consulting fees" are deductible by the partnerships. Petitioners bear the burden of proving that these fees were reasonable compensation for consulting services rendered by the previous owners of the farms. Rule 142(a); Botany Mills v. United States,278 U.S. 282 (1929); sec. 162(a)(1). Respondent argues that petitioners have failed *92 to provide any evidence that these fees were reasonable compensation for consulting services actually rendered by the prior owners. See sec. 1.162-7(a), Income Tax Regs.
Petitioners contend that it was necessary to pay these fees in order to obtain valuable information about the farms. They have failed, however, to show either that the prior owners of the farms did in fact consult with the partnerships after they sold the farms to Richtron or that the partnerships received from such owners any information in addition to that received by Richtron before making the purchase. Furthermore, petitioners' witness testified that the amount of time the prior owners consulted the partnerships was at most one day per farm. Thus, we find that the amounts deducted by the partnerships for "consulting fees" were not reasonable compensation for consulting services which, at most, consisted of a few hours of discussion with the prior owners of the farms. We conclude that the fees were simply part of the purchase price of each farm and therefore should be added to the partnerships' bases in the farms. See Sanders v. Commissioner,75 T.C. 157 (1980); *93 Stevens v. Commissioner,46 T.C. 492 (1966), affd. 388 F.2d 298 (6th Cir. 1968). Accordingly, we sustain respondent's determination that no portion of these consulting fees is deductible under section 162(a)(1). Issue 3. Standing Crops
FINDINGS OF FACT AND OPINION Pursuant to their contracts to purchase farms from Richtron, five of the partnerships in issue agreed to pay certain sums to Richtron for "standing crops" located on the farms. [11] Each of these partnerships allocated a portion of the total purchase price of its farm to the standing crops. On their returns for the years in which they purchased the farms, these partnerships each deducted a portion of the purchase price allocable to the standing crops [12] based on the theory that the crops were sold to the lessees of the farms and that the amounts allocated to standing crops represented a part of cost of goods sold. None of these partnerships, however, reported any income from the sale of these crops in the year they took the deductions. On their individual returns, petitioners claimed a distributive share of the above-reported partnership deductions. In his notices *94 of deficiency, respondent disallowed all of the above-claimed deductions except for $6,744 of Moreland's deduction. The issue is whether the partnerships were entitled to deduct the amounts they paid for standing crops in the years they acquired the farms. Since petitioners and their respective partnership are considered "farmers" under section 1.61-4(d), Income Tax Regs., [13] they are subject to the following restriction imposed by section 1.61-4(a), Income Tax Regs.: The profit from the sale of livestock or other items which were purchased is to be ascertained by deducting the cost from the sales price in the year in which the sale occurs, * * *. This Court *95 has previously held this regulation valid, see D. E. Alexander v. Commissioner,22 T.C. 234, 241 (1954), and in Sykes v. Commissioner,57 T.C. 618, 627 (1972), this Court applied the regulation in holding that the proper period of deduction for bee larvae which were purchased for resale was the year of sale. Petitioners' sole contention is that the crops were sold to the lessees of the farms in the same year the partnerships purchased the farms and therefore they were entitled to deduct the cost of the standing crops that year. There is no evidence in the record, however, to support this contention. The leases entered into between the partnerships and third parties do not show that ownership of the crops was transferred to the lessees nor that additional payments were made as payments for those crops. Thus, the five partnerships are not entitled to deductions for the amounts paid for standing *96 crops in the years they purchased the farms, but they may be entitled to deduct the amounts allocated to standing crops in the years they actually sell the crops. See Sykes v. Commissioner,supra,
Issue 4. Rockpicking and Land Preparation Expenses
FINDINGS OF FACT AND OPINION Two of the partnerships in issue, Moreland and Grandview, entered into agreements with Richtron to have Richtron perform land preparation and rockpicking services on their farms. Although some rockpicking and land preparation is necessary each year, the rockpicking and land preparation required by Moreland and Grandview were major project because these farms were in poor condition when purchased by the partnerships. The partnerships wanted the land to be improved to increase its value for eventual resale. Moreland paid $37,300 to Richtron for these services in 1978 and Grandview paid $11,500 and $13,626 to Richtron for these services in 1978 and 1979, respectively. Each partnership deducted deducted its respective amount on its return for the year in question, and petitioners claimed a distributive share of the deductions. In his notices of deficiency, respondent *97 disallowed $36,735 of Moreland's deduction and $11,500 and $7,625.32 of Grandview's deductions for 1978 and 1979, respectively. The issue is whether the amounts paid by the two partnerships to Richtron for rockpicking and land preparation are deductible expenses under section 162. Respondent argues that these expenses are nondeductible capital expenditures under section 263. [14] Petitioners argue, however, that these expenses were ordinary and necessary business expenses deductible under section 162. For the following reasons, we agree with respondent. Section 263(a) provides that no current deduction shall be allowed for any amount paid out for permanent improvements or betterments made to increase the value of any property. It is necessary to take into consideration the purpose for which an expenditure is made in determining whether such expenditure is capital in nature or constitutes *98 a current expense. Oberman Manufacturing Co. v. Commissioner,47 T.C. 471, 482 (1967). The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense under section 162; such expenditures are distinguishable from those for replacements, alterations, improvements or additions which prolong the useful life of the property, increase its value or make it adaptable to a different use. Secs. 1.162-4 and 1.263(a)-1(a)(1), Income Tax Regs.; Oberman Manufacturing Co. v. Commissioner,supra.Petitioners bear the burden of proving that the costs for rockpicking and land preparation are deductible business expenses. Rule 142(a). The evidence herein establishes that the farms purchased by Moreland and Grandview were in poor condition and that the purpose for the extensive rockpicking and land preparation was to increase the value of these farms for eventual resale. The extent of rockpicking and land preparation was *99 greater than would ordinarily be necessary to keep the farms in an efficient operating condition. Although a small portion of the rockpicking and land preparation may have constituted necessary annual maintenance expenses, we are in no position to allow a deduction for such a portion since petitioners have failed to give us a basis for making such a determination. Accordingly, we conclude that no portion of the rockpicking and land preparation expenses is deductible by the partnerships and therefore such expenses must be capitalized under section 263. Issue 5. Depreciation
FINDINGS OF FACT AND OPINION Moreland, which purchased its farm from Richtron for $562,300, is the only partnership to which this issue is applicable. Moreland's farm consisted of 1,427 acres of land, two houses, two potato cellars, irrigation equipment, wells, sheds, and barns. [15] The farmland alone was worth between $400 and $500 per acre, or in the aggregate at least $570,000. *100 Based on the portion of the purchase price which it allocated to the depreciable property, Moreland took a depreciation deduction of $18,124 in 1978 of which petitioners claimed a distributive share. In his notice of deficiency, respondent disallowed $1,990 of Moreland's depreciation deduction for 1978. The issue is whether Moreland is entitled to a depreciation deduction in excess of the amount allowed by respondent. Where, as here, a combination of depreciable and nondepreciable property is purchased for a lump sum, the basis for depreciation cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time. Sec. 1.167(a)-5, Income Tax Regs.; Randolph Building Corp. v. Commissioner,67 T.C. 804, 807 (1977). Petitioners bear the burden of proving, in accordance with this formula, that Moreland properly allocated a portion of its total basis in the farm to the depreciable assets based on the relative *101 values of the depreciable and nondepreciable assets at the time of acquisition. Rule 142(a). Petitioners argue that Moreland's allocation of the total purchase price to the depreciable assets complied with section 1.167(a)-5, Income Tax Regs. Respondent argues, however, that Moreland simply valued the depreciable assets based on their fair market value at the time of acquisition and not based on their proportionate share of the purchase price of the farm. We agree with respondent. Petitioners rely entirely on the testimony of one of Richtron's farm managers who stated that the value allocated to each piece of depreciable property was reasonable. His testimony was based, however, on the fair market values of the items of depreciable property at the time of acquisition rather than on their proportionate share of the total purchase price of the farm. As the formula in section 1.167(a)-5, Income Tax Regs., applies to this case, Moreland's basis for depreciation cannot exceed the total purchase price ($562,300) times a fraction, the numerator of which is the value of the depreciable property at the time of acquisition *102 and the denominator of which is the value of the entire property at that time. The farmland itself had a fair market value approximately equal to Moreland's total purchase price and the depreciable assets had an aggregate fair market value of $226,762. Thus, since the lump sum paid for the farm was less than the aggregate fair market values of the depreciable and nondepreciable property, the basis allocable to the depreciable property pursuant to this formula must be less than the fair market values. [16] Accordingly, since Moreland impermissibly used the fair market values of the depreciable property as its basis for depreciation, we sustain respondent's determination. To reflect concessions and the foregoing, [17]
Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Philip O. Boyer and Marian E. Boyer, David L. Gillette and Doris P. Gillette, Earl V. Gritton and Helen M. Gritton, D. Wilson Hales and Anne Hales, James R. Lindsley and Una F. Lindsley, Gregory A. Miller, Jr., George W. Nixon and Janice M. Nixon, Alan L. Nye and Beverly B. Nye, Toffie G. Sawaya and Alice A. Sawaya, Russell J. Smuin and Evelyn Smuin, Henry A. Totzke and Martha V. Totzke, Harvey P. Wheelwright and Marilyn G. Wheelwright, docket No. 24632-82; Leo S. Bankhead and Diane C. Bankhead, Jerald H. Bennion and Constance Bennion, Virgil R. Condon and Marilyn Condon, J. William DeYoung and Beth DeYoung, Harold R. Eason and Rita C. Eason, Val B. Johnson and Janet P. Johnson, Rex M. Kohler and Ivy Jean Kohler, J. Kirk Moyes and Sharyl B. Moyes, Robert Crouch Newman and Eleanor R. Newman, Alan L. Nye and Beverly B. Nye, Ralph Nye, O & M Plumbing & Heating Co., Henry A. Totzke and Martha V. Totzke, docket No. 26291-82; and G. Jerry Hayes and Joyce R. Hayes H. Norman Hayes, H. Norman Hayes and Maurine Hayes, docket No. 30215-82.↩
2. The parties agree that for purposes of this case Paul Richins and all of the companies he formed are the same entity. ↩
3. Petitioners are limited partners in the following 12 limited partnerships: Catlow Valley 2, 3, 4, 5 and 7 Burley Farms Kanosh Farms Moreland Properties Grandview Properties Shoshone Farms West Taber Richfield Farms↩
4. Catlow Valley 5 and 7 were sold to the partnerships at a profit the year after Richtron purchased them.↩
5. We note that the Court does not know how Richtron treated any of the payments received from the partnerships herein for Federal income tax purposes. ↩
6. The 12 partnerships in issue were to operate for the following number of years: ↩
Burley
25
All Catlow Farms
20
Grandview
22
Kancsh
10
Moreland
24
Richfield
20
Shoshone
20
West Taber
15
7. The following amounts were deducted by the partnerships as management fees: ↩
Limited Partnerships
Amount
Burley
$35,000
Catlow Valley 2
16,500
Catlow Valley 3, 4, 5 & 7
16,970 each
Grandview
21,000
Kanosh
23,000
Moreland
84,730
Richfield
67,500
Shoshone
45,000
West Taber
20,000
8. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
9. We note that, as part of The Tax Reform Act of 1976, sec. 709 was enacted to deal with such fees. Sec. 709(a) expressly provides that syndication fees are not deductible and that, except as provided by sec. 709(b), organization fees are not deductible. Sec. 709(b) allows a partnership to elect to amortize and deduct over a period of not less than 60 months its capital expenditures incurred in organizing the partnership. However, sec. 709(b) is inapplicable in the present case, since it is effective only with respect to organization fees paid or incurred in taxable years beginning after December 31, 1976.Tax Reform Act of 1976, Pub. L. 94-455, sec. 213(f)(3), 90 Stat. 1549.↩
10. The following amounts were deducted by the partnerships as consulting fees: ↩
Limited Partnerships
Amount
Burley
$15,000
Catlow Valley 2, 3, 4, 5 & 7
1,927 each
Grandview
6,400
Kanosh
8,000
Moreland
15,500
Richfield
19,500
Shoshone
18,000
West Taber
11,900
11. The five limited partnerships which paid for "standing crops" are Catlow Valley 2, Catlow Valley 3, Catlow Valley 4, Moreland, and Richfield. ↩
12. The following amounts were deducted by the partnerships for standing crops: ↩
Limited Partnership
Amount
Catlow Valley 2 & 3
$2,252 each
Catlow Valley 4
2,253
Moreland
39,500
Richfield
24,500
13. Sec. 1.61-4(d), Income Tax Regs.↩, provides that all individuals, partnerships, or corporations that cultivate, operate, or manage farms for gain or profit, either as owners or tenants, are designated as farmers.
14. Sec. 182 is not applicable because it is an elective section and the partnerships failed to make such an election. See sec. 1.182-6(a), Income Tax Regs.↩
15. Moreland allocated the following amounts for these depreciable assets from the total purchase price of $562,300: ↩
(1) Brick House
$38,000
(2) Frame House
19,500
(3) Potato Cellars
30,000
(4) Sheds and Barns
12,000
(5) Irrigation Equipment
61,422
(6) Wells
65,840
TOTAL
$226,762
16. Pursuant to the formula in sec. 1.167(a)-5, Income Tax Regs., Moreland's basis allocable to the depreciable property cannot exceed the following: $562,300 X 226,762/789,062 = $161,594.70↩
17. Since we have sustained all of respondent's determinations, the parties agree that we need not determine the effect of the at risk rules under sec. 465 in this case.↩